## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JOHNSON CITY MEDICAL CENTER<br>400 North State of Franklin Road<br>Lower Level<br>Johnson City, Tennessee  37604<br><br>COX MEDICAL CENTER<br>Executive Offices, Suite 500<br>3850 S. National Avenue<br>Springfield, MO  65807<br><br>Plaintiffs,<br><br>vs.<br><br>MICHAEL O. LEAVITT, Secretary of the<br>United States Department of Health and<br>Human Services<br>200 Independence Avenue, S.W.<br>Washington, D.C. 20585<br><br>Defendant. | CASE NO.<br><br>**COMPLAINT FOR JUDICIAL REVIEW<br>PURSUANT TO THE MEDICARE ACT,<br>42 U.S.C. § 1395oo(f)** |

Plaintiffs JOHNSON CITY MEDICAL CENTER and COX MEDICAL CENTER

("Plaintiffs") alleges as follows:

### JURISDICTION AND VENUE

1.      This action arises under Title XVIII of the Social Security Act, as amended, 42

United States Code ("U.S.C.") §§ 1395-1395ggg ("Medicare Act").

2.      Jurisdiction exists under 42 U.S.C. § 1395oo(f).

3.      Venue lies in this judicial district pursuant to 42 U.S.C. § 1395oo(f).

### PARTIES

4.      Plaintiff JOHNSON CITY MEDICAL CENTER is, and has been at all times

relevant to this action, a duly certified provider of hospital services under Medicare and has been

assigned a Medicare provider Number. Plaintiff is an acute care hospital located in Johnson City, Tennessee.

5.      Plaintiff COX MEDICAL CENTER is, and has been at all times relevant to this action, a duly certified provider of hospital services under Medicare and has been assigned a Medicare provider Number. Plaintiff is an acute care hospital located in Springfield, Missouri.

6.      Defendant MICHAEL O. LEAVITT, Secretary of the United States Department of Health and Human Services ("Secretary"), is the federal officer responsible for administering the Medicare program.

## INTRODUCTION

7.      By this action, the Plaintiffs challenge the Secretary's application of a Medicare statute that directs the Secretary to make additional Medicare payments to hospitals that serve "a significantly disproportionate number of low-income patients." These additional payments are commonly referred to as disproportionate share hospital or "DSH" payments. Under the relevant statute, the term "low-income" patients includes patients eligible for medical assistance under a state plan of medical assistance approved under Title XIX of the Social Security Act. When computing the Plaintiffs' eligibility for additional DSH payments during the fiscal year at issue, the Secretary applied a policy requiring the exclusion of hospital days attributable to patients eligible for assistance under Title XIX if the patients received benefits through a program known as a "section 1115 waiver" program.  The Secretary's action in this case, to the extent it precludes patient days attributable to Section 1115 waiver populations from factoring into the DSH payment calculation for portions of any cost reporting period prior to January 20, 2000, contravenes the plain and unambiguous wording of the controlling Medicare statute, is inconsistent with congressional intent, and is arbitrary, capricious and otherwise contrary to law.

Further, the Secretary's application of the DSH statute inappropriately draws a distinction between similarly situated Medicare providers in violation of the right to equal protection of laws afforded by the United States Constitution.

### THE MEDICARE PROGRAM

8.     The Medicare Act establishes a system of health insurance for the aged and disabled. 42 U.S.C. §§ 1395-1395ggg.  The Medicare program is federally funded and is administered by the Secretary through the Centers for Medicare and Medicaid Services ("CMS").[1]  42 U.S.C. § 1395kk; 42 Federal Register ("Fed. Reg.") 13,202 (Mar. 9, 1977).

9.     Medicare providers are required to submit an annual "cost report" which, among other things, identifies the total costs incurred during the course of a 12 month fiscal year. 42 Code of Federal Regulations ("C.F.R.") §§ 413.20, 413.24. Fiscal intermediaries are required to analyze and audit the cost report and to inform the provider of a determination of the amount of total Medicare reimbursement owing the provider. 42 C.F.R. § 405.1803. The determination is referred to as the notice of amount of program reimbursement ("NPR"). 42 C.F.R. §§ 405.1801(a), 405.1803.

10.     Fiscal intermediaries make Medicare payments to providers pursuant to contracts with the Secretary. 42 U.S.C. § 1395h. If a provider of Medicare services is dissatisfied with its intermediary's determination of Medicare program reimbursement for a particular fiscal period and qualifies under 42 U.S.C. § 1395oo(a), the provider may appeal the intermediary's decision to the Provider Reimbursement Review Board ("PRRB" or "Board"). 42 U.S.C. § 1395oo.

11.     The PRRB may determine either on its own motion or at the request of a provider that it lacks the authority to decide a "question of law or regulations relevant to the matters in

---

[1] At certain times relevant to this Complaint, CMS was known as the Health Care Financing Administration ("HCFA"). The agency will be referred to herein as either CMS or HCFA, depending on the context, as appropriate.

controversy." 42 U.S.C. § 1395oo(f)(1). A case for which the PRRB makes such a determination is eligible for what is generally known as expedited judicial review ("EJR").

12.     If the PRRB determines that it lacks the authority to decide the issue raised by the provider in its appeal, a provider may seek judicial review of that issue by filing a lawsuit within 60 days of the receipt of the PRRB's EJR determination. 42 U.S.C. § 1395oo(f)(1).

### THE MEDICAID PROGRAM AND SECTION 1115 WAIVERS

13.     Medicaid is a joint federal and state program established in Title XIX of the Social Security Act ("the Act") to provide "medical assistance" to indigent persons who meet certain eligibility criteria.  42 U.S.C. § 1396; 42 C.F.R. § 430.0.

14.     The term "medical assistance" means "payment of part or all of the cost" of 25 different types of health care services listed in the statute, including inpatient hospital services. 42 U.S.C. § 1396d(a).

15.     To participate in the Medicaid program and receive Federal funding, a State must submit a "State plan" that meets federal requirements for approval by the Secretary of the U.S. Department of Health and Human Services ("the Secretary"). 42 U.S.C. §§ 1396, 1396a; 42 C.F.R. Part 430. Under an approved State plan, a State receives Federal matching funds according to a "Federal medical assistance percentage," or "FMAP," for State expenditures on medical assistance. 42 U.S.C. §§ 1396, 1396d(b); 42 C.F.R. § 433.10.

16.     Section 1115 of the Social Security Act, as codified at 42 U.S.C. § 1315, allows the Secretary to approve State research and demonstration projects that promote the objectives of the Title XIX Medicaid program. 42 U.S.C. § 1315. Section 1115, in relevant part, reads as follows:

> (a) In the case of any experimental, pilot, or demonstration project which, in the judgment of the Secretary, is likely to assist in promoting the

objectives of [title] . . . XIX. . . in a State or States

(1) the Secretary may waive compliance with any of the requirements of section . . . 1902 [42 U.S.C. § 1396a] of this title, as the case may be, to the extent and for the period he finds necessary to enable such State or States to carry out such project, and

(2)(A) costs of such project which would not otherwise be included as expenditures under section ... 1903 [42 U.S.C. § 1396b] of this title ... shall, to the extent and for the period prescribed by the Secretary, be regarded as expenditures under the State plan or plans approved under such [title], or for administration of such State plan or plans, as may be appropriate .. .

17.     Section 1115(a)(1) allows the Secretary to waive the requirements of section 1902, which contains Medicaid State plan requirements, including requirements concerning eligible populations. 42 U.S.C. § 1315(a)(1). Section 1115(a)(2)(A) allows a State to receive federal matching funds for medical assistance, including medical assistance provided to expanded eligibility populations, for which the State would not ordinarily be entitled to receive federal matching funds. 42 U.S.C. § 1315(a)(2). Importantly, such federal funding is required by Section 1115 to be deemed as expenditures "under the State plan or plans approved under [title XIX]. . . ." 42 U.S.C. § 1315(a)(2)(A).

18.     Under some Section 1115 waivers, the State furnishes medical assistance to a population that otherwise could have been made eligible for Medicaid. Under other Section 1115 waivers, the State furnishes medical assistance to expanded eligibility populations that could not otherwise have been made eligible for Medicaid. 65 Fed. Reg. 3136 (Jan. 20, 2000). As stated by the Secretary, "the statute allows for the expansion populations to be treated as Medicaid beneficiaries." 65 Fed. Reg. at 3137.

## MEDICARE DSH PAYMENTS

19.     Since 1983, the Medicare program has paid most hospitals for the operating costs of inpatient hospital services under a prospective payment system ("PPS"). 42 U.S.C. §

1395ww(d)(l)-(5); 42 C.F.R. Part 412. Under PPS, Medicare pays hospitals a standardized amount per case subject to certain payment adjustments. *Id*. A hospital that serves a disproportionate share of low-income patients, or a DSH, is also entitled to an upward adjustment to the Medicare PPS payments. 42 U.S.C. § 1395ww(d)(5)(F). Congress established the DSH adjustment to account for the relatively higher costs associated with furnishing health care services to low-income patients, who tend to be sicker than other patients.

20.    A hospital's qualification for a Medicare DSH adjustment and the amount of the Medicare DSH payment due a hospital are determined, in part, by its "disproportionate patient percentage" ("DSH patient percentage"), which is a proxy for the Provider's utilization by low income patients. 42 U.S.C. § 1395ww(d)(5)(F)(v). The DSH patient percentage is defined as the sum of two fractions expressed as percentages. 42 U.S.C. § 1395ww(d)(5)(F)(vi). One of these fractions is commonly known as the "Medicaid Percentage." The numerator of the fraction used to compute the Medicaid Percentage consists of the number of the Provider's patient days attributable to patients who were "eligible for medical assistance under a State plan approved under Title XIX , but who were not entitled to benefits under Part A of [Medicare]." 42 U.S.C. § 1395ww(d)(5)(F)(vi)(II) .

21.    The meaning of the statutory language "eligible for medical assistance under a State plan approved under Title XIX" is key to the analysis of the Provider's DSH payment issue. From 1986 through 1997, HCFA interpreted this language to exclude inpatient days attributable to patients who were eligible for Medicaid benefits if Medicaid did not actually make payment for those inpatient days. *See* 51 Fed. Reg. 16,777 (May 6, 1986); 51 Fed. Reg. 31,460-61 (Sept. 3, 1986). On February 27, 1997, through HCFA Ruling 97-2, HCFA rescinded

the policy of excluding eligible-but-unpaid Medicaid patient days from the numerator of the Medicaid Percentage. 42 C.F.R. § 412.106(b)(4)(I)(2002) .

## TREATMENT OF SECTION 1115 WAIVER DAYS

22.     Until early 2000, the Medicare regulations did not specifically address the treatment of Section 1115 waiver days under DSH, and HCFA policy on this issue was not otherwise made clear. Accordingly, some hospitals were allowed to include in the DSH calculation days attributable to Section 1115 expansion populations, while-others were not. 65 Fed. Reg. at 3,137 (prior to January 2000, "because [HCFA's] prior guidance on certain aspects of [the] Medicare DSH policy was insufficiently clear, many hospitals in States with approved section 1115 expansion waivers [had] been receiving Medicare DSH payments reflecting the inclusion of expansion population days.").

23.     Through Program Memorandum A-99-62, HCFA instructed fiscal intermediaries to allow the inclusion of "ineligible waiver or demonstration population days" for cost reporting periods beginning before January 1, 2000, to the extent that they had allowed their inclusion for cost reporting periods settled prior to October 15, 1999. Health Care Financing Administration Program Memorandum A-99-62, "Clarification of Allowable Medicaid Days in the Medicare Disproportionate Share Hospital (DSH) Adjustment Calculation" (Dec. 1, 1999) ("PM A-99-62"). Under PM A-99-62, certain hospitals were allowed to include "uninsured days," and others were not, for the same time periods.

24.     While PM A-99-62 mentions that some hospitals had received "erroneous" DSH payments as a result of including "ineligible waiver or demonstration population days" in the number of Medicaid days used for DSH calculations, it does not expressly state HCFA's policy on the treatment of Section 1115 waiver days. Attached to PM A-99-62 is a chart that

"summarizes some, but not necessarily all, of the types of days to be excluded from (or included in) the Medicare DSH adjustment calculation." Absent from this detailed list is any reference to "Section 1115 waiver days." PM A-99-62.

25.    On January 20, 2000, HCFA issued an "interim final rule with comment period" to address the treatment under the DSH statute of inpatient days attributable to patients who were eligible for Medicaid in a State with a Section 1115 Medicaid waiver. 65 Fed. Reg. 3,136. Through this interim final rule, HCFA established that effective with discharges occurring on or after January 20, 2000, hospitals may include the patient days of all populations eligible for Title XIX matching payments through a State's Section 1115 waiver in calculating the Provider's adjustment. 65 Fed. Reg. at 3,136-37. The regulation codifying this policy is found at 42 C.F.R. § 412.106(b)(4)(ii) (2002).

26.    When it finalized the interim final rule as part of the 2001 inpatient PPS rule, HCFA described its Section 1115 waiver days policy as follows:

> While [HCFA] initially determined that States under a Medicaid expansion waiver could not include those expansion waiver days as part of the Medicare DSH adjustment calculation, we have since consulted extensively with Medicaid staff and determined that section 1115 expansion waiver days are utilized by patients whose care is considered to be an approved expenditure under Title XIX.... [T]hese days are considered to be Title XIX days by Medicaid standards.

See 65 Fed. Reg. 47,026, 47,087 (Aug. 1, 2000).

## FACTS AND PROCEDURAL HISTORY OF THIS CASE

27.    The State of Tennessee first received approval for its Section 1115 demonstration project, called TennCare, on November 19, 1993. On January 1, 1994, Tennessee became the first state to move its Medicaid program enrollees to a statewide demonstration project. In addition to Medicaid eligible persons, TennCare offered coverage to expansion populations of

uninsured and uninsurable persons, regardless of income, who would not have been eligible for Medicaid under the program as it existed prior to the waiver.

28.    Under TennCare, as described in a letter from HCFA Administrator Thomas Scully to the State of Tennessee, the State is entitled to receive Title XIX federal matching funds for expenditures for the populations who would not have otherwise been eligible for Medicaid in that State. HCFA invoked Section 1115 in describing this entitlement:

> Under the authority of section 1115(a)(2) of the Social Security Act, expenditures made by the State for [certain] items ... (which are not otherwise included as expenditures under section 1903) shall, for the period of the project, be regarded as expenditures under the State's Title XIX plan.

29.    The first of these items listed in the letter is: "Expenditures for the following eligibility groups: those who are uninsurable because of pre-existing conditions, and those who are uninsured." According to the "Special Terms and Conditions" ("STCs") governing TennCare, the State receives federal matching funds for "actual cash capitation payments .. . made by the State to MCOs for each TennCare enrollee[,]" and "[t]he Standard Medicaid funding process [is] used during the TennCare demonstration."

30.    Similarly, the State of Missouri has received approval for a Section 1115 waiver demonstration project, which was in effect for Plaintiff Cox Medical Center's fiscal year ended 5/30/2002.

31.    On September 26, 2002,  Plaintiff Johnson City Medical Center was issued an NPR for its FYE 6/30/00 by its Medicare fiscal intermediary Riverbend Government Benefits Administrator ("Intermediary"). In auditing the Plaintiff Johnson City Medical Center's cost report, the Intermediary failed to include approximately 3, 711 Section 1115 waiver days . The exclusion of these Title XIX days unlawfully reduced Plaintiff Johnson City Medical Center's DSH payment adjustment.

32.     By letter dated March 24, 2003, Plaintiff Johnson City Medical Center timely appealed to the PRRB the Intermediary's audit adjustment excluding the Section 1115 waiver days from the calculation of the Plaintiffs DSH payment adjustment for FYE 6/30/00.

33.     By letter dated August 13,2005, Plaintiff Johnson City Medical Center requested, along with Plaintiff Cox Medical Center, that its individual appeal be transferred to and consolidated with Group Appeal 05-1985G.

34.     On September 15, 2003, Plaintiff Cox Medical Center was issued an NPR for its FYE 9/30/00 by its Medicare fiscal intermediary Mutual of Omaha Insurance ("Intermediary"). In auditing the Plaintiff Cox Medical Center's cost report, the Intermediary failed to include approximately 550 Section 1115 waiver days . The exclusion of these Title XIX days unlawfully reduced Plaintiff Cox Medical Center's DSH payment adjustment.

35.     By letter dated February 20, 2004, Cox Medical Center timely appealed to the PRRB the Intermediary's audit adjustment excluding the Section 1115 waiver days from the calculation of the Plaintiffs DSH payment adjustment for FYE 9/30/00.

36.     By letter dated August 13,2005, Plaintiff Cox Medical Center requested along with Plaintiff Johnson City Medical Center that its individual appeal be transferred to and consolidated with Group Appeal 05-1985G.

37.     By letter dated October 20, 2005, the Plaintiffs requested that the PRRB make a determination that the PRRB lacked the authority to decide the Plaintiffs' appeal and that EJR therefore was the appropriate procedure for resolving the case.

38.     By letter dated December 19, 2005, the PRRB issued a letter certifying the Plaintiffs' appeal for EJR. (A copy of the PRRB's letter designating this case for EJR is attached

hereto as Exhibit 1). Accordingly, pursuant to 42 U.S.C. § 1395oo(f)(1), all administrative remedies have been exhausted and this case is now ripe for judicial review.

39.    This Complaint is filed within 60 days of receipt of the PRRB's determination, as required by 42 U.S.C. §1395oo(f)(1).

## INVALIDITY OF THE SECRETARY'S ACTION

40.    The Secretary's action in this case is reviewable by this Court pursuant to the provisions of the Administrative Procedure Act, 5 U.S.C. § 706. 42 U.S.C. § 1395oo. The Secretary's failure to include all Section 1115 waiver days in calculating the Plaintiffs' eligibility for a Medicare DSH payment adjustment for the fiscal years at issue is inconsistent with and unauthorized by the Medicare statute and regulations, is arbitrary and capricious, and is not authorized by the Equal Protection clause of the United States Constitution, for the following reasons, among others:

a.    The plain language of the Social Security Act requires the inclusion in the DSH calculation of all Section 1115 waiver days. The Medicare DSH statute provides that the numerator of the DSH Medicaid Percentage include days for patients who were "eligible for medical assistance under a State Plan approved under Title XIX." Under the governing statute, the DSH calculation should include all patients who were eligible for medical assistance under a Medicaid state plan implemented through a Section 1115 waiver, including uninsured patients in expansion populations. All of the Plaintiffs' Section 1115 days are properly considered patient days associated with patients eligible for medical assistance under a state plan approved under Title XIX and therefore must be included in the Plaintiffs' DSH calculation.

b.    Nothing in the Medicare regulations effective for cost reporting periods prior to the ones at issue in this case required or allowed expansion waiver days to be excluded from the

DSH calculation. In fact, HCFA has acknowledged expressly that Section 1115 days are considered Title XIX days for DSH purposes.

      c.     The Secretary's application of the DSH statute in this case is arbitrary and capricious. As part of its rulemaking process for fiscal year 2000, HCFA declared that "inpatient hospital days for . . . individuals eligible for Title XIX matching payments under a section 1115 waiver are to be included as Medicaid days for purposes of the Medicare DSH adjustment calculation." However, HCFA indicated that the policy of including such waiver days is effective only for hospital discharges occurring on or after January 20, 2000. There is no reasonable basis for interpreting the Medicare DSH statute, which has not changed with respect to the language regarding the Medicaid Percentage, in a way that only takes effect on January 20, 2000 and excludes Section 1115 waiver days from the Medicaid Percentage for prior periods.

      d.     The Secretary's application of the DSH statute in this case inappropriately distinguishes between similarly situated Medicare providers without any rational basis. Through PM A-99-62, HCFA ordered fiscal intermediaries to reopen cost reports and include Section 1115 waiver days in the DSH calculation for Medicare providers that had appeals on file with the PRRB on or before October 15, 1999. Any providers that did not have appeals on file by the deadline set forth in PM A-99-62, such as the Plaintiffs, were not eligible for an adjustment. Under the approach to calculating DSH eligibility established by HCFA through PM A-99-62, hospitals with the same kind of Section 1115 waiver days are treated differently without any distinction called for by the governing statute or regulation. It is arbitrary and capricious for HCFA to treat similarly-situated hospitals differently by applying one interpretation of its rules in some cases and a different interpretation in other cases.

e.      The Secretary's methodology for calculating DSH payments under PM A-99-62 violates the Equal Protection component of the Due Process clause set forth in the 5th Amendment to the United States Constitution. HCFA may not set forth an arbitrary appeal deadline that places the Plaintiffs in the position of not being able to include all Section 1115 waiver days in the DSH Medicaid Percentage when another provider with the same (or very similar) fiscal year end, in the same state, with the same type of Section 1115 waiver days, can include all its Section 1115 waiver days solely because the cost report for that provider was audited in a more timely fashion or an NPR for that provider was issued to that provider earlier. A provider's DSH calculation should not and cannot depend on the timing of the audit cost report or the ensuing appeal letter. The Secretary's October 15, 1999 deadline for appeal therefore violates basic notions of equal protection of the law.

f.      The Secretary has offered no reasoned analysis and identifies no relevant factual differences to justify the disparate treatment of like hospitals with respect to the inclusion of Section 1115 waiver days in the DSH payment calculation.

g.      The Secretary's treatment of Section 1115 waiver days conflicts with the intent of the Medicare DSH statute. The purposes of the DSH adjustment is to compensate hospitals for the additional cost associated with furnishing care to a large number of indigent.  The expansion population in Tennessee and Missouri, which the Plaintiffs Johnson City Medical Center and Cox Medical Center, respectively,  treated, consists entirely of indigent patients. The Secretary therefore has denied the Plaintiffs additional reimbursement to which they are entitled for treating a disproportionate share of low income patients.

**WHEREFORE,** Plaintiffs requests relief as follows:

1.     For an order reversing the fiscal intermediary's audit adjustment to the Plaintiffs

Medicare cost reports for the fiscal years at issue, and requiring the Secretary to include all

Section 1115 waiver days, including days for uninsured patients in expansion populations, in the

Medicaid Percentage of the Medicare DSH calculation;

2.     For interest pursuant to 42 U.S.C. § 1395oo(f)(2);

3.     For costs of suit; and

4.     For such other and further relief as the Court deems appropriate.

DATED: February 6, 2006                    Respectfully submitted,


                                           HONIGMAN MILLER SCHWARTZ AND
                                           COHN LLP


                                           Kenneth R. Marcus
                                           D.C. Bar No. MI 0016
                                           2290 First National Building
                                           660 Woodward Avenue
                                           Detroit, MI  48226
                                           Tel: 313-465-7470
                                           Fax: 313-465-7471

                                           Attorneys for Plaintiffs


DETROIT.2067287.1

14



**DEPARTMENT OF HEALTH AND HUMAN SERVICES**
**PROVIDER REIMBURSEMENT REVIEW BOARD**
2520 Lord Baltimore Drive, Suite L
Baltimore MD 21244-2670
Phone: 410-786-2671          FAX: 410-786-5298

Suzanne Cochran, Esq., Chairperson
Gary B. Blodgett, D.D.S.
Elaine Crews Powell, CPA
Anjali Mulchandani-West

Refer to:    05-1985G

CERTIFIED MAIL

J.C. Ravindran
Quality Reimbursement Services
150 North Santa Anita Avenue
Suite 570A
Arcadia, CA 91067

1 9 DEC 2005

RE: QRS 2000 Section 1115 Waiver Group
     Provider Nos. Various
     FYEs Various
     PRRB Case No. 05-1985G

Dear Mr. Ravindran:

This is in response to the Providers' request that the Provider Reimbursement Review Board (Board), pursuant to 42 U.S.C. § 1395oo(f)(1), determine that it is without the authority to decide the question of whether the regulation, 42 C.F.R. § 412.106(b)(4)(ii), which excludes section 1115 expansion waiver days from the calculation of the disproportionate share adjustment prior to January 20, 2000, is valid.

The Providers believe that this regulation conflicts with 42 U.S.C. § 1395ww(d)(5)(F)(vi)(I) and (II), (the disproportionate share (DSH) calculation) which provides for two proxies as measures of the volume of low-income patients served by a hospital:

> (1) the percentage of patients entitled to supplemental security income; and

> (2) the percentage of total hospital days provided to "patients who (for such days) were eligible for medical assistance under a State plan approved under the Medicaid program.

The Providers believe that the regulation conflicts with the statutory language of §1395ww(d)(5)(F)(vi)(II). Section 1395oo(f)(1) permits providers that have requested and are entitled to a hearing before the Board under 42 U.S.C. § 1395oo(a), to bypass the Board's hearing procedure and obtain judicial review of an issue involving a question of law or regulation where the Board determines that it is without the authority to decide such question.

The Board has reviewed the submissions of the Providers pertaining to the requests for hearing and expedited judicial review. The documentation shows that the estimated amount in controversy for the appeal exceeds $50,000, as required for a group appeal. The estimated amount in controversy is subject to recalculation by the Intermediary for the actual final amount.

Provider Reimbursement Review Board
Page 2 J.C. Ravindrin                                          CN05-1985G

The Board finds that:

1) it has jurisdiction over the matter for the subject year and the Providers are entitled to a hearing before the Board;

2) based upon the Providers' assertions regarding the section 1115 waiver issue, there are no findings of fact for resolution by the Board;

3) it is bound by the applicable existing Medicare law and regulation (42 C.F.R. § 405.1867); and

4) it is without the authority to decide the legal question of whether the regulation, 42 C.F.R. § 412.106(b)(4)(ii), which excludes section 1115 expansion waiver days from the calculation of the disproportionate share adjustment prior to January 20, 2000, is valid.

Accordingly, the Board finds that the section 1115 waiver issue properly falls within the provisions of 42 U.S.C. § 1395o (f) (1) and hereby grants the Providers' request for expedited judicial review for the issue and the subject years. The Providers have 60 days from the receipt of this decision to institute the appropriate action for judicial review. Since this is the only issue under dispute, the Board hereby closes the case.

Board Members Participating

    Suzanne Cochran, Esq. (Dissenting)
    Gary B. Blodgett, DDS
    Elaine C. Powell, CPA

                        FOR THE BOARD:

                        Suzanne Cochran, Esq.
                        Chairman

Enclosures: 42 U.S.C. § 1395oo (f)(1), Schedule of Providers

cc: Terry Gouger, Mutual of Omaha (w/Schedule of Providers)
    Mike Shaver, Riverbend GBA (TN) (w/Schedule of Providers)
    Wilson Leong, BCBSA (w/Schedule of Providers)

# SCHEDULE OF PROVIDERS IN GROUP

Group Name: **QRS 2000 SECTION 1115 WAIVER DAYS GROUP APPEAL**

Representative: **QUALITY REIMBURSEMENT SERVICES**

Case No.: **05-1985G**    Issue: **Section 1115 Waiver Days Group Appeal**

Page No. ___1___ of ___1___

Date Prepared    October 21, 2005

| Provider No. | Provider Name County, State | City, | FYE | Intermediary | A Date of Final Determ | B Date of Hearing Request | C No. of Days | Audit Adj. No. | D Apprrox. Amount | E Original Case No. | F Add/Transfer | G Date of |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 26-0040 | Cox Medical Center Springfield, MO | | 9/30/2000 | Mutual of Omaha Ins. | 9/15/2003 | 2/20/2004 | 158 | 56657 | 191,512 | 05-0736 | | 8/13/2005 |
| 2 44-0063 | Johnson City Medical Center Johnson City, TN | | 6/30/2000 | Riverbend, GBA | 9/26/2002 | 3/24/2003 | 179 | 30 | 1,595,320 | 03-0957 | | 8/13/2005 |

Have copy of document

TOTAL    1,786,832

JS-44
(Rev.1/05 DC)

# CIVIL COVER SHEET

| I (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| Johnson City Medical Center<br>Cox Medical Center | Michael O. Leavitt, Secretary of the United States<br>Department of Health and Human Services |
| **(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF ___8888___<br>(EXCEPT IN U.S. PLAINTIFF CASES) | COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT<br>(IN U.S. PLAINTIFF CASES ONLY)<br>NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF<br>LAND INVOLVED |
| **(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)<br>Kenneth R. Marcus<br>Honigman Miller Schwartz and Cohn LLP<br>660 Woodward Avenue 2290 First National Bldg<br>Detroit, MI 48226<br>313 465 7470 | ATTORNEYS (IF KNOWN)<br>ALBERTO R. GONSALES, Attorney General of the<br>US<br>KENNETH L. WAINSTEIN , U.S. Attorney for the<br>District of Columbia |

## II. BASIS OF JURISDICTION
(PLACE AN x IN ONE BOX ONLY)

○ 1 U.S. Government
   Plaintiff

○ 3 Federal Question
   (U.S. Government Not a Party)

◉ 2 U.S. Government
   Defendant

○ 4 Diversity
   (Indicate Citizenship of
   Parties in item III)

## III CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) **FOR DIVERSITY CASES ONLY!**

|  | PTF | DFT |  | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ○ 1 | ○ 1 | Incorporated or Principal Place<br>of Business in This State | ○ 4 | ○ 4 |
| Citizen of Another State | ○ 2 | ○ 2 | Incorporated and Principal Place<br>of Business in Another State | ○ 5 | ○ 5 |
| Citizen or Subject of a<br>Foreign Country | ○ 3 | ○ 3 | Foreign Nation | ○ 6 | ○ 6 |

## IV. CASE ASSIGNMENT AND NATURE OF SUIT
(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)

◉ **A.** *Antitrust*

☐ 410 Antitrust

○ **B.** *Personal Injury/*
   *Malpractice*

☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury
☐ 362 Medical Malpractice
☐ 365 Product Liability
☐ 368 Asbestos Product Liability

○ **C.** *Administrative Agency*
   *Review*

☐ 151 Medicare Act

**Social Security:**
☐ 861 HIA ((1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g)
☐ 864 SSID Title XVI
☐ 865 RSI (405(g)
**Other Statutes**
☐ 891 Agricultural Acts
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☒ 890 Other Statutory Actions (If
      Administrative Agency is Involved)

○ **D.** *Temporary Restraining*
   *Order/Preliminary*
   *Injunction*

Any nature of suit from any category may
be selected for this category of case
assignment.

*(If Antitrust, then A governs)*

## ○ E. *General Civil (Other)*    OR    ○ F. *Pro Se General Civil*

**Real Property**
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent, Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

**Personal Property**
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

**Bankruptcy**
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

**Prisoner Petitions**
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition

**Property Rights**
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

**Federal Tax Suits**
☐ 870 Taxes (US plaintiff or
      defendant
☐ 871 IRS-Third Party 26
      USC 7609

**Forfeiture/Penalty**
☐ 610 Agriculture
☐ 620 Other Food &Drug
☐ 625 Drug Related Seizure
      of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 RR & Truck
☐ 650 Airline Regs
☐ 660 Occupational
      Safety/Health
☐ 690 Other

**Other Statutes**
☐ 400 State Reapportionment
☐ 430 Banks & Banking
☐ 450 Commerce/ICC
      Rates/etc.
☐ 460 Deportation

☐ 470 Racketeer Influenced &
      Corrupt Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Satellite TV
☐ 810 Selective Service
☐ 850 Securities/Commodities/
      Exchange
☐ 875 Customer Challenge 12 USC
      3410
☐ 900 Appeal of fee determination
      under equal access to Justice
☐ 950 Constitutionality of State
      Statutes
☐ 890 Other Statutory Actions (if
      not administrative agency
      review or Privacy Act

| G. *Habeas Corpus/ 2255* | H. *Employment Discrimination* | I. *FOIA/PRIVACY ACT* | J. *Student Loan* |
|---|---|---|---|
| ☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ☐ 442 Civil Rights-Employment<br>(criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions<br>(if Privacy Act)<br><br><br>*(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted Student Loans (excluding veterans) |

| K. *Labor/ERISA (non-employment)* | L. *Other Civil Rights (non-employment)* | M. *Contract* | N. *Three-Judge Court* |
|---|---|---|---|
| ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting & Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights<br>☐ 445 American w/Disabilities-Employment<br>☐ 446 Americans w/Disabilities-Other | ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ 441 Civil Rights-Voting (if Voting Rights Act) |

**V. ORIGIN**

◉ 1 Original Proceeding   ○ 2 Removed from State Court   ○ 3 Remanded from Appellate Court   ○ 4 Reinstated or Reopened   ○ 5 Transferred from another district (specify)   ○ 6 Multi district Litigation   ○ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)

42 U.S.C. Section 1395oo(f); Plaintiffs seek order requiring inclusion of "Section 1115 Waiver Days" in computing disproportionate share adjustment

**VII. REQUESTED IN COMPLAINT**   CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23   ☐   DEMAND $ _____   Check YES only if demanded in complaint   JURY DEMAND:   YES ☐   NO ☒

**VIII. RELATED CASE(S) IF ANY**   (See instruction)   YES ☒   NO ☐   If yes, please complete related case form.

DATE  2/6/2006     SIGNATURE OF ATTORNEY OF RECORD  *Kitty R Marull*

---

**INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44**
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

**I.**  COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

**III.**  CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

**IV.**  CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

**VI.**  CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

**VIII.**  RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.

CLERK=S OFFICE
UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

CO-932
Rev. 4/96

NOTICE OF DESIGNATION OF RELATED CIVIL CASES PENDING
IN THIS OR ANY OTHER UNITED STATES COURT

Civil Action No. _____
(To be supplied by the Clerk)

**NOTICE TO PARTIES:**

Pursuant to Rule 405(b)(2), you are required to prepare and submit this form at the time of filing any civil action which is related to any pending cases or which involves the same parties and relates to the same subject matter of any dismissed related cases. This form must be prepared in sufficient quantity to provide one copy for the Clerk=s records, one copy for the Judge to whom the cases is assigned and one copy for each defendant, so that you must prepare 3 copies for a one defendant case, 4 copies for a two defendant case, etc.

**NOTICE TO DEFENDANT:**

Rule 405(b)(2) of this Court requires that you serve upon the plaintiff and file with your first responsive pleading or motion any objection you have to the related case designation.

**NOTICE TO ALL COUNSEL**

Rule 405(b)(3) of this Court requires that as soon as an attorney for a party becomes aware of the existence of a related case or cases, such attorney shall immediately notify, in writing, the Judges on whose calendars the cases appear and shall serve such notice on counsel for all other parties.

_____

The plaintiff, defendant or counsel must complete the following:

I.   RELATIONSHIP OF NEW CASE TO PENDING RELATED CASE(S).

A new case is deemed related to a case pending in this or another U.S. Court if the new case:  [Check appropriate box(e=s) below.]

| | | |
|---|---|---|
| [ ] | (a) | relates to common property |
| [X] | (b) | involves common issues of fact |
| [X] | (c) | grows out of the same event or transaction |
| [ ] | (d) | involves the validity or infringement of the same patent |
| [ ] | (e) | is filed by the same pro se litigant |

2.   RELATIONSHIP OF NEW CASE TO DISMISSED RELATED CASE(ES)

A new case is deemed related to a case dismissed, with or without prejudice, in this or any other U.S. Court, if the new case involves the <u>same</u> parties and <u>same</u> subject matter.

Check box if new case is related to a dismissed case: [ ]

3.   NAME THE UNITED STATES COURT IN WHICH THE RELATED CASE IS FILED (IF OTHER THAN THIS COURT):

_____

4.   CAPTION AND CASE NUMBER OF RELATED CASE(E=S).  IF MORE ROOM IS NEED PLEASE USE OTHER SIDE.

See separate page, please _____ v. _____ C.A. No. _____

February 6, 2006
DATE

Signature of Plaintiff /Defendant (or counsel)

Notice of Designation of Related Civil Cases

Attachment to Form CO0932


To the knowledge of the attorney for Plaintiffs, the following related cases are pending in this Court:

BHI et al v. Leavitt, Case No. 06-0070 (JR)

Lifepoint Hospitals, Inc. v. Leavitt, Case No. 05-2224 (RMC)

Cookeville Regional Medical Center et al  v. Leavitt, Case No.04-1053(JR)

CO-386-online
10/03

# United States District Court
# For the District of Columbia

Johnson City Medical Center )
Cox Medical Center )
                     )
             Plaintiff )
vs )        Civil Action No._____
Michael O. Leavitt, Secretary of the United )
States Department of Health and Human )
Services )
             Defendant )

### CERTIFICATE RULE LCvR 7.1

I, the undersigned, counsel of record for ___Johnson City Medical Center and Cox Medical Center___ certify that to the best of my knowledge and

belief, the following are parent companies, subsidiaries or affiliates of ___Johnson City Medical Center and Cox Medical Center___ which have

any outstanding securities in the hands of the public:

NONE.

These representations are made in order that judges of this court may determine the need for recusal.

Attorney of Record

_____
Signature

MI 0016
_____
BAR IDENTIFICATION NO.

Kenneth R. Marcus
_____
Print Name

660 Woodward Avenue, Detroit, MI 48226
_____
Address

Detroit     MI       48226
_____
City        State      Zip Code

313 465 7470
_____
Phone Number