# Administrative Record
# <u>Johnson City Medical Center, et al.</u>, Civil No. 06-0220 (PLF)

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JOHNSON CITY MEDICAL CENTER ) | |
| COX MEDICAL CENTER, ) | |
| ) | |
| Plaintiffs ) | |
| ) | |
| ) | |
| vs. ) | Civil Action No. 06-0220 |
| ) | |
| ) | |
| MICHAEL O. LEAVITT, ) | |
| SECRETARY, DEPARTMENT OF ) | |
| HEALTH AND HUMAN ) | |
| ) | |
| Defendant. ) | |

# C E R T I F I C A T I O N

I, Jacqueline R. Vaughn, Attorney Advisor, Centers for Medicare and Medicaid Services, Department of Health and Human Services, under authority delegated by the Secretary, certify that the documents attached constitute a true and accurate transcript of the official file as furnished by the Provider Reimbursement Review Board (PRRB). These documents are the record of the PRRB's proceedings and decision granting expedited judicial review under Title XVIII of the Social Security Act, as amended.

Date: March 27, 2006

Jacqueline R. Vaughn

QRS 2000 Section 1115 Waiver Group

PRRB Case No. 05-1985G

## COURT TRANSCRIPT INDEX

| | Page No(s). |
|---|---|
| PRRB Decision, dated December 19, 2005, granting Expedited Judicial Review | 1-3 |
| Providers' Response to PRRB Request for Information | 4 |
| PRRB Letter, dated November 16, 2005, requesting Information | 5 |
| Providers' Request, dated October 20, 2005, for Expedited Judicial Review, with Supporting Documents | 6-69 |
| PRRB Acknowledgement and Instructions | 70-71 |
| Providers' Request, dated August 13, 2005, for Hearing | 72-76 |



**DEPARTMENT OF HEALTH AND HUMAN SERVICES**
**PROVIDER REIMBURSEMENT REVIEW BOARD**
2520 Lord Baltimore Drive, Suite L
Baltimore MD 21244-2670
Phone: 410-786-2671          FAX: 410-786-5298

Suzanne Cochran, Esq., Chairperson
Gary B. Blodgett, D.D.S.
Elaine Crews Powell, CPA
Anjali Mulchandani-West

Refer to:      05-1985G

CERTIFIED MAIL

J.C. Ravindran
Quality Reimbursement Services                              19 DEC 2005
150 North Santa Anita Avenue
Suite 570A
Arcadia, CA 91067

> RE: QRS 2000 Section 1115 Waiver Group
> Provider Nos. Various
> FYEs Various
> PRRB Case No. 05-1985G

Dear Mr. Ravindran:

This is in response to the Providers' request that the Provider Reimbursement Review
Board (Board), pursuant to 42 U.S.C. § 1395oo(f)(1), determine that it is without the
authority to decide the question of whether the regulation, 42 C.F.R. § 412.106(b)(4)(ii),
which excludes section 1115 expansion waiver days from the calculation of the
disproportionate share adjustment prior to January 20, 2000, is valid.

The Providers believe that this regulation conflicts with 42 U.S.C. § 1395ww(d)(5)(F)(vi)(I)
and (II), (the disproportionate share (DSH) calculation) which provides for two proxies as
measures of the volume of low-income patients served by a hospital:

> (1) the percentage of patients entitled to supplemental security income; and

> (2) the percentage of total hospital days provided to "patients who (for such days)
> were eligible for medical assistance under a State plan approved under the Medicaid
> program.

The Providers believe that the regulation conflicts with the statutory language of
§1395ww(d)(5)(F)(vi)(II). Section 1395oo(f)(1) permits providers that have requested and
are entitled to a hearing before the Board under 42 U.S.C. § 1395oo(a), to bypass the Board's
hearing procedure and obtain judicial review of an issue involving a question of law or
regulation where the Board determines that it is without the authority to decide such
question.

The Board has reviewed the submissions of the Providers pertaining to the requests for
hearing and expedited judicial review. The documentation shows that the estimated
amount in controversy for the appeal exceeds $50,000, as required for a group appeal.
The estimated amount in controversy is subject to recalculation by the Intermediary for
the actual final amount.

1

Provider Reimb...sement Review Board
Page 2 J.C. Ravindrin

CN05-1985G

The Board finds that:

1) it has jurisdiction over the matter for the subject year and the Providers are entitled to a hearing before the Board;

2) based upon the Providers' assertions regarding the section 1115 waiver issue, there are no findings of fact for resolution by the Board;

3) it is bound by the applicable existing Medicare law and regulation (42 C.F.R. § 405.1867); and

4) it is without the authority to decide the legal question of whether the regulation, 42 C.F.R. § 412.106(b)(4)(ii), which excludes section 1115 expansion waiver days from the calculation of the disproportionate share adjustment prior to January 20, 2000, is valid.

Accordingly, the Board finds that the section 1115 waiver issue properly falls within the provisions of 42 U.S.C. § 1395oo (f) (1) and hereby grants the Providers' request for expedited judicial review for the issue and the subject years. The Providers have 60 days from the receipt of this decision to institute the appropriate action for judicial review. Since this is the only issue under dispute, the Board hereby closes the case.

<u>Board Members Participating</u>

Suzanne Cochran, Esq. (Dissenting)
Gary B. Blodgett, DDS
Elaine C. Powell, CPA

FOR THE BOARD:

Suzanne Cochran, Esq.
Chairman

Enclosures: 42 U.S.C. § 1395oo (f)(1), Schedule of Providers

cc: Terry Gouger, Mutual of Omaha (w/Schedule of Providers)
Mike Shaver, Riverbend GBA (TN) (w/Schedule of Providers)
Wilson Leong, BCBSA (w/Schedule of Providers)

2

# SCHEDULE OF PROVIDERS IN GROUP

Group Name __QR& 2000 SECTION 1115 WAIVER DAYS GROUP APPEAL__                    Page No. ___1___ of ___1___

Representative __QUALITY REIMBURSEMENT SERVICES__                    Date Prepared    __October 21, 2005__

Case No.    __05-19850__         Issue    Section 1115 Waiver Days Group Appeal

| Provider No. | Provider Name County, State | City. | FYE | Intermediary | A Date of Final Determ | B Date of Hearing Request | C No. of Days | D Audit Adj. No. | E Approx. Amount | F Original Case No. | G Date of Add/Transfer |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 26-0040 | Cox Medical Center Springfield, MO | | 9/30/2000 | Mutual of Omaha Ins. | 9/15/2003 | 2/20/2004 | 198 | 56657 | 191,512 | 05-0736 | 8/13/2005 |
| 2 44-0063 | Johnson City Medical Center Johnson City, TN | | 6/30/2000 | Riverbend, GBA | 9/26/2002 | 3/24/2003 | 179 | 30 | 1,595,320 | 03-0957 | 8/13/2005 |
| | | | | | | TOTAL | | | 1,786,832 | | |

Have copy of document

3

MMF

# *QUALITY REIMBURSEMENT SERVICES*
## *Healthcare Consultants*

**Via United Parcel Service**

December 1, 2005

Ms. Elaine Crews Powell, CPA
Board Member
Provider Reimbursement & Review Board
2520 Lord Baltimore Drive, Suite L
Baltimore, MD 21244-2670

RECEIVED

DEC 0 5 2005

PROVIDER REIMBURSEMENT
REVIEW BOARD

| Re: | **Group Name** | : | **QRS 2000 Section 1115 Waiver Days Group** |
|---|---|---|---|
| | **Provider Numbers** | : | **Various** |
| | **Fiscal Years Ended** | : | **Various** |
| | **PRRB Case Number** | : | **05-1985G** |
| | **Request for Expedited Judicial Review** | | |

Dear Ms. Crews Powell:

We write with reference to your letter dated November 16, 2005 on the above referenced group appeal.

We inadvertently stated that "the documents are organized in 19 sets of exhibits" when in actual fact the documents were organized in only 2 sets of exhibits, each with 4 tabs A, B, D and G as there are only two Providers in this group appeal.

If you have any questions, please feel free to contact me at (626) 445-5092.

Sincerely,

J. C. Ravindran
President

cc: Mr. Terry Gouger, Appeals Supervisor, Medicare Audit & Reimbursement, Mutual of Omaha Insurance Plaza, Lower Level 2, Omaha, NE 68131

Mr. Wilson C. Leong, Director, Medicare Appeals, Blue Cross Blue Shield Association, 225 N. Michigan Avenue, Chicago, IL 60601-7680

Enclosures

DR

4

**DEPARTMENT OF HEALTH AND HUMAN SERVICES**
**PROVIDER REIMBURSEMENT REVIEW BOARD**
2520 Lord Baltimore Drive, Suite L
Baltimore MD 21244-2670
Phone: 410-786-2671                    FAX: 410-786-5298

Suzanne Cochran, Esq., Chairperson
Martin W. Hoover, Jr., Esq.
Gary B. Blodgett, D.D.S.
Elaine Crews Powell, CPA
Anjali Mulchandani-West

Refer to:

05-1985G
CERTIFIED MAIL

**16 NOV 2005**

J.C. Ravindran
Quality Reimbursement Advisors
1800 Century Park East
Suite 600
Los Angeles, CA 90067

RE: QRS 2000 Section 1115 Waiver Days Group Appeal
Provider Nos. Various
FYEs Various
PRRB Case No. 05-1985G

Dear Mr. Ravindran:

The Provider Reimbursement Review Board (Board) has reviewed the Providers' request for expedited judicial review (EJR). Prior to determining whether EJR is appropriate, the Board needs additional information from you. This request for additional information affects the 30-day time limit for responding to the Providers' EJR request. See, 42 C.F.R. §§ 405.1842(b)(3) and(d)(3).

A review of the Schedule of Providers and accompanying jurisdictional documents, as well as the initial request, indicates that there are two Providers participating in this appeal. On page two of the Providers' EJR request, it states that "the documents are organized in 19 sets of exhibits, one set for each hospital fiscal year in the group." However, the documents contain only two sets of exhibits, one for each provider in the group, 10 tabs in total with 8 tabs for exhibits. Please explain the discrepancy.

The requested information is to be received in the Board's offices within 30 days of the date of this letter. If you fail to respond in a timely manner, the Board will determine that it has the authority to decide the issue and continue the hearing process. See, 42 C.F.R. § 405.1842(d)(3).

Sincerely,

Certified Article Number

7160 3901 9849 1073 6369

SENDERS RECORD

Elaine Crews Powell, CPA
Board Member                    5

cc: Terry Gouger, Mutual of Omaha

**File Copy**

| OFFICE | SURNAME | DATE | OFFICE | SURNAME | DATE |
|--------|---------|------|--------|---------|------|
| PRRB | Maropotek | 11/14/05 | | | |
| ✓ | P. Powell | 11/14/05 | | | |

# *QUALITY REIMBURSEMENT SERVICES*
## *Healthcare Consultants*

**Via United Parcel Service**

October 20, 2005

RECEIVED

OCT 24 2005

PROVIDER REIMBURSEMENT
REVIEW BOARD

Ms. Suzanne Cochran, Esq.
Chairperson
Provider Reimbursement & Review Board
2520 Lord Baltimore Drive, Suite L
Baltimore, MD 21244-2670

Re:   **Request for Expedited Judicial Review**
   **QRS 2000 Section 1115 Waiver Days Group Appeal**
   **PPRB Case No. 05-1985G**
   **Fiscal Intermediary:  Mutual of Omaha Insurance Company & BCBSA**

Dear Ms. Cochran:

Quality Reimbursement Services is the group representative for the above referenced group appeal. By this letter, we hereby close this group. The documentation enclosed with this letter includes all necessary documentation for closure in accordance with the Group Appeal instructions issued by the Provider Reimbursement Review Board (the "Board").

In addition, pursuant to Section 1878 (f)(1) of the Social Security Act (the "Act"), the group participant providers ("Hospitals" or "Providers") hereby request expedited judicial review ("EJR"). As discussed in Section II below, EJR should be granted because the group participants challenge the legality of a regulation, 42 C.F.R. § 412. l06(b)(4)(ii), by which the Secretary of Health and Human Services (the "Secretary") excludes Section 1115 expanded waiver days from the Medicaid days portion of the Disproportionate Share ("DSH") calculation for discharges prior to January 20, 2000. Such exclusion violates the Medicare DSH statute, 42 U.S.C. § 1395ww(d), and EJR should be granted.

## I.   CLOSURE OF GROUP APPEAL

By letter dated August 11, 2005, the Hospitals' representative established this group appeal in accordance with 42 U.S.C. § 1395oo and 42 C.F.R. § 405.1837 and § 405.1841. *See* Exhibit 1.

Each group participant appeals the determination made by its fiscal intermediary ("Intermediary") regarding the disproportionate share adjustment. The Schedule of Providers included as Exhibit 2 lists each hospital fiscal year in the group and provides the jurisdictional information required by Board rules.

*1800 Century Park East, Suite 600, Los Angeles, CA 90067*
*BIRMINGHAM   CHICAGO   COLORADO SPRINGS   DETROIT   LOS ANGELES   SEATTLE*

6

The jurisdictional documents follow the Schedule of Providers in the accompanying binder. The jurisdictional documents consist of final determinations, original hearing requests, audit adjustments and transfer/add letters. The documents are organized in 19 sets of exhibits, one set for each hospital fiscal year in the group. Each set has behind it tabs A, B, D, and G, which represent the following:

- Tab A: <u>NPRs</u>

- Tab B: <u>Original Requests for Hearing</u>. (either for an individual appeal or to directly participate in the group)

- Tab D: <u>Audit Adjustment Reports</u>.

- Tab G: <u>Transfer/Add Letters</u>. (if transferred from an existing appeal)

As shown in the Schedule of Providers, each identified fiscal year was either added to the group appeal within 180 days of an original or revised Notice of Program Reimbursement, transferred from a timely filed preexisting individual appeal, or added to a preexisting individual appeal and transferred to the group appeal. Finally, the amount in controversy is, in the aggregate, more than $50,000.

Letters of representation appointing Quality Reimbursement Services to act on behalf of the named Providers in this action are also included.

## II.   <u>REQUEST FOR EJR</u>

The Providers hereby request EJR, which is appropriate and required in this case. This group appeal challenges as violative of the Medicare disproportionate share ("DSH") statute, the Secretary's regulation at 42 C.F.R. § 412.106(b)(4)(ii), which reflects numerous policy statements, by which the Secretary excluded from the DSH Medicaid-eligible day count prior to January 20, 2000 all expanded Section 1115 waiver days. The Board lacks authority to invalidate the Secretary's regulation and the intermediary action mandated by the regulation and the Secretary's announced instructions. The nature of the issue and the appropriateness of EJR are discussed below.

## A.   The Disproportionate Share Adjustment

Pursuant to the Comprehensive Omnibus Reconciliation Act of 1985 ("COBRA"), Congress created an adjustment to Prospective Payment ("PPS") rates for hospitals serving a "significantly disproportionate number of low income patients." 42 U.S.C. § 1395ww(d)(5)(F). This DSH adjustment requires the Secretary to adjust PPS payments for hospitals that provide in-patient services to a disproportionate share of low-income patients. The statute, 42 U.S.C. § 1395ww(d)(5)(F), provides for two proxies as measures of the volume of low-income patients served by a hospital: (1) the percentage of total Medicare inpatient days provided to low-income Medicare patients (i.e., those patients

entitled to supplemental security income under Title XVI of the Social Security Act) ("Medicare fraction"); and (2) the percentage of total hospital days provided to "patients who (for such days) were eligible for medical assistance under a state Plan approved under [the Medicaid program]" ("Medicaid fraction"). The sum of these two fractions constitutes the individual hospital's disproportionate patient percentage.

This appeal concerns the Secretary's interpretation of the Medicaid fraction. Subsequent to the passage of 42 U.S.C. § 1395ww(d)(5)(F)(vi) in 1986, the Secretary established a policy through formal issuances and binding policy statements, and ultimately promulgated a regulation, interpreting the Medicaid fraction as not including inpatient days attributed to section 1115 expanded waiver days, for discharges prior to January 20, 2000. 42 C.F.R. §412.106(b)(4). The Provider group's appeal challenges the validity of the regulation and the Secretary's statutory interpretation on which it is based. As mandated by the Medicare statute and congressional intent, the Medicaid fraction must include these expanded waiver days prior to January 20, 2000.

B.    Section 1115 Expansion Waivers

Some states provide medical assistance (Medicaid) under a demonstration project referred to as a section 1115 waiver. *See* Social Security Act ("SSA") § 1115. Under such waiver, the federal government waives certain Medicaid requirements in SSA § 1902 (such as freedom of choice, comparability, and statewide applicability) in order to implement certain experimental or demonstration projects under the state plan. *Id.*

In enacting the Section 1115 waiver provision, Congress mandated that Section 1115 programs be regarded as programs approved under State plans. The statute provides that, the costs of such project which would not otherwise be included as expenditures under section 3, 455, 1003, 1403, 1603, or 1903 as the case may be, and which are not included as part of the costs of projects under Section 1115, shall, to the extent and for the period prescribed by the Secretary, be regarded as expenditures under the State plan or plans approved under such title.

SSA § 1115(a)(2)(A).

In some cases, Section 1115 waivers cover patients that otherwise could have been made eligible for Medicaid under the State plan. In other cases, the Section 1115 waiver may provide for medical assistance to expanded eligibility populations of low income-individuals who could not otherwise be made eligible for Medicaid (these populations are known as "low income expansion populations" and the inpatient days attributed to their care are known as "expanded waiver days"). CMS has acknowledged that one purpose of the Section 1115 waiver is to extend Title XIX matching payments to services furnished to populations that otherwise could not have been made eligible for Medicaid. *See* Interim Final Rule, 65 FR 3136, Jan. 20, 2000 (the "Interim Final Rule"). CMS has also stated that the statute allows for the expansion populations to be treated as Medicaid

beneficiaries. *Id.* The Provider group contends that the Medicare statute and congressional intent require that these days be included in the Medicaid fraction portion of the DSH calculation.

C.     CMS' Unlawful Preclusion of Section 1115 Expanded Waiver Days in the DSH Medicaid Fraction

The Secretary has interpreted the Medicare statute as precluding inclusion of the expanded waiver days in the Medicaid fraction of the DSH calculation, and in fact has issued numerous binding policy statements and memoranda prohibiting providers from claiming, and intermediaries from counting, expanded waiver days in the DSH calculation. For example, the Secretary issued an Interim Final Rule 65 FR 3136 on Jan. 20, 2000 (attached) to specifically address its long-standing and binding policy to preclude inclusion of Section 1115 expanded waiver days in the DSH calculation. The Secretary clearly stated through his agent CMS as follows:

> Under current policy, hospitals were to include in the Medicare DSH calculation only those days for populations under the Section 1115 waiver who were or could have been made eligible under a State plan. Patient days of the expanded eligibility groups, however, were not to be included in the Medicare DSH calculation.

*Id.*, at Section I.B.

Moreover, with that Interim Final Rule, and with Final Rule 65 FR 47054 (Aug. 1, 2000) (attached), CMS promulgated a regulation that permitted inclusion of expanded waiver days in the Medicaid fraction for discharges on or after January 20, 2000, but expressly prohibited their inclusion for discharges **prior** to January 20, 2000. The regulatory provision, 42 C.F.R. § 412.106(b)(4)(ii) (attached)., provides,

> Effective with discharges occurring on or after January 20, 2000, for purposes of counting days under paragraph (b)(4)(i) of this section, hospitals may include all days attributable to populations eligible for Title XIX matching payments through a waiver approved under Section 1115 of the Social Security Act.

Even before the promulgation of the above limiting regulation, CMS issued policy statements to prohibit the inclusion of waiver days in the Medicaid Fraction.  For example, CMS issued Transmittal No. A-99-62, December 1999 (attached), to reiterate its interpretation of days to be included in the Medicaid fraction of the DSH calculation, and to hold certain providers harmless for the erroneous inclusion of unallowable days under certain circumstances. In the transmittal, CMS identified "ineligible waiver or demonstration population days" as days that are not includable in the DSH calculation.

The Secretary's interpretation of the Medicare DSH statute as evidenced in the promulgation of 42 C.F.R. § 412.106(b)(4)(ii) and numerous policy statements, violates the Medicare statute and congressional intent and is therefore invalid.

D.    EJR is Appropriate Because the Board Has No Authority To Decide Issues of Governing Law, Regulation, or CMS Policy Statements

Under § 1878(f)(l) of the Social Security Act (42 U.S.C. § 1395oo(f)(l)), the Board must grant EJR if it lacks the authority to decide a question of "law, regulation, or CMS Ruling" raised by a provider. See also, 42 C.F.R. § 405.1842; PRM-I § 2920.3; and Board Instructions Part I.E.

Here, the Hospitals challenge the validity of 42 C.F.R. § 4 12. 1 06(b)(4)(ii) and the Secretary's interpretation of the Medicare DSH statute, 42 U.S.C. § 1395ww(d)(5), to exclude Section 1115 expanded Waiver days in the DSH calculation. The Hospitals seek to invalidate the Secretary's regulation and mandatory policy issuances that exclude such days for discharges prior to January 20, 2000. The issue in this group appeal, as stated in the group representative's August 11, 2005 letter establishing this appeal, reflects the Provider group's challenge to a CMS law, regulation, or binding policy statement:

> Whether the Intermediary's determination of DSH eligibility and/or the DSH adjustment, as required by the Health Care Financing Administration's ("HCFA") [now CMS] unlawful interpretation of the DSH statute 42 U.S.C. § 1395ww(d)(5)(f), to exclude [expand] Section 1115 waiver days in the Medicaid days portion of the DSH calculation for discharges prior to January 20, 2000 [promulgated as regulation 42 C.F.R. § 412.106(b)(4)(ii)], violates the DSH statute.

Because the legal issue presented in this appeal concerns the validity under the Medicare DSH statute of a regulation and its underlying policy, the Board has no authority to provide the ruling and relief sought. Therefore, the Board must grant the Provider group's request for EJR.

E.    Factual Issues

This appeal involves a legal issue — the validity of a CMS regulation (and policy). There are no pertinent factual issues in dispute.

III.  CONCLUSION

Based on the foregoing discussion and referenced documentation, the group representative hereby closes the "QRS 2000 Section 1115 Waiver Days" Group appeal, and requests that the Board grant, within the thirty-day period mandated by the Medicare statute, the Hospitals' petition for EJR.

Suzanne Cochran, 1
10/21/2005
Page 6 of 6


Please notify the undersigned if the Board has any questions or requires any further documentation regarding this request.

Sincerely,

*[signature]*

J. C. Ravindran
President

cc:    Mr. Terry Gouger, Appeals Supervisor, Medicare Audit & Reimbursement, Mutual of Omaha Insurance Company, Mutual of Omaha Plaza, Lower Level 2, Omaha, NE 68131

       Mr. Wilson C. Leong, Director, Medicare Appeals, Blue Cross Blue Shield Association, 225 N. Michigan Avenue, Chicago, IL 60611

       Kenneth C. Marcus, Esq., Honigman Miller Schwartz & Cohn., 2290 First National Building, Detroit, MI 48226

Enclosures

JCR:DR

COPYRIGHT 2001, CCH Incorporated

**Medicare Inpatient Disproportionate Share Hospital Adjustment Calculation.**

Interim Final Rule  65 FR 3136, Jan. 20, 2000.

### Medicare and Medicaid: Disproportionate Share Hospitals

**Prospective payment systems--Disproportionate share hospital adjustment--Waivers.--**
A change has been implemented with regard to the Medicare disproportionate share hospital (DSH) calculation policy in reference to Sec. 1115 expansion waiver days. Specifically, effective with discharges occurring on or after Jan. 20, 2000, hospitals are allowed to include, in calculating the Medicare DSH adjustment, the inpatient hospital days attributable to patients made eligible for Medicaid pursuant to a state's Social Security Act Sec. 1115 waiver. Previously, only those days for patients under a Sec. 1115 waiver who were, or could have been made eligible, for Medicaid under a state plan were to be included in the Medicare DSH calculation. Patient days of expanded eligibility groups, however, were not included in the calculation. The change will increase the DSH payments that hospitals in states with Sec. 1115 expansion waivers will receive.

See ¶4269.18, ¶14,625.61, ¶14,725.13.
[Text of Interim Final Rule]

DEPARTMENT OF HEALTH AND HUMAN SERVICES

Health Care Financing Administration

42 CFR Part 412

[HCFA-1124-IFC]

RIN 0938-AJ92

Medicare Program; Medicare Inpatient Disproportionate Share Hospital (DSH) Adjustment Calculation: Change in the Treatment of Certain Medicaid Patient Days in States With 1115 Expansion Waivers

AGENCY: Health Care Financing Administration (HCFA), HHS.

ACTION: Interim final rule with comment period.

SUMMARY: This interim final rule with comment period implements a change to the Medicare DSH adjustment calculation policy in reference to section 1115 expansion waiver days. This rule sets forth the criteria to use in calculating the Medicare DSH adjustment for hospitals for purposes of payment under the prospective payment system.

DATES: Effective date: January 20, 2000.

Applicability Date: These regulations are applicable to discharges occurring on or after January 20, 2000.

Comment date: Comments will be considered if we receive them at the appropriate address, as provided below, no later than 5 p.m. on March 20, 2000.

ADDRESSES: Mail an original and 3 copies of written comments to the following address: Health Care Financing Administration, Department of Health and Human Services, Attention: HCFA-1124-IFC, P.O. Box 8010, Baltimore, MD 21244-8010.

If you prefer, you may deliver an original and 3 copies of your written comments to one of the following addresses: Room 443-G, Hubert H. Humphrey Building, 200 Independence Avenue, SW, Washington, DC 20201, or Room C5-16-03, 7500 Security Boulevard, Baltimore, Maryland 21244-1850.

FOR FURTHER INFORMATION CONTACT: Kathleen Buto, Deputy Director, Center for Health Plans and Providers, (202) 205-2505.

REG-ADOPT, MED-GUIDE 2000-1 MED-GUIDE-TB ¶180,075, Medicare Inpatient Disproportionate Share Hospital Adjustment Calculation., (Jan. 20, 2000)

COPYRIGHT 2001, CCH Incorporated

10

## SUPPLEMENTARY INFORMATION:

I. Background

A. Summary

The Medicare disproportionate share hospital (DSH) adjustment provision under section 1886(d)(5)(F) of the Social Security Act (the Act) was enacted by section 9105 of the Consolidated Omnibus Budget Reconciliation Act (COBRA) of 1985 and became effective for discharges occurring on or after May 1, 1986, as set forth in the May 6, 1986 final rule with comment period (51 FR 16772).

The size of a hospital's Medicare DSH adjustment, which is applied to the hospital inpatient prospective payment system (PPS) payment, is based on the sum of the percentage of patient days attributable to patients eligible for both Medicare Part A and Supplemental Security Income (SSI), and the percentage of patient days attributable to patients eligible for Medicaid but not Medicare Part A. The first computation includes days for patients who, during a given month, were entitled to both Medicare Part A and SSI (excluding State supplementation). This number is divided by the number of covered patient days utilized by patients under Medicare Part A for that same period. The second computation includes patient days associated with beneficiaries who were eligible for medical assistance (Medicaid) under a State plan approved under Title XIX but who were not entitled to Medicare Part A. (See 42 CFR 412.106(b)(4).) This number is divided by the total number of patient days for that same period.

Currently, hospitals whose disproportionate patient percentage exceeds a certain threshold (which varies for urban and rural areas) receive either a fixed adjustment or, in the case of large urban hospitals (100 or more beds) or large rural hospitals (500 or more beds), a variable adjustment based on a statutory formula. As of April 1, 1990, variable adjustments were made for large urban hospitals and rural referral centers. Facilities that qualify as rural referral centers as well as sole community hospitals receive the greater of a fixed adjustment or a variable adjustment based on a statutory formula. Qualifying large rural hospitals and sole community hospitals receive a fixed adjustment. Urban hospitals with 100 or more beds that receive funds from State and local governments for indigent care in excess of 30 percent of net inpatient revenues are treated separately (42 CFR 412.106(c)).

B. Section 1115 Expansion Waivers

Some States provide medical assistance under a demonstration project (also referred to as a section 1115 waiver). In some section 1115 waivers, a given population that otherwise could have been made eligible for Medicaid under section 1902(r)(2) or 1931(b) in a State plan amendment is made eligible under the waiver. These populations are referred to as hypothetical eligibles, and are specific, finite populations identifiable in the budget neutrality agreements found in the Special Terms and Conditions for the demonstrations; the patient days utilized by that population are to be recognized for purposes of calculating the Medicare DSH adjustment. In addition, the section 1115 waiver may provide for medical assistance for expanded eligibility populations that could not otherwise be made eligible for Medicaid.

Under current policy, hospitals were to include in the Medicare DSH calculation only those days for populations under the section 1115 waiver who were or could have been made eligible under a State plan. Patient days of the expanded eligibility groups, however, were not to be included in the Medicare DSH calculation.

II. Provisions of the Interim Final Rule With Comment Period

In this interim final rule with comment period, we are revising the policy, effective with discharges occurring on or after January 20, 2000, to allow hospitals to include the patient days of all populations eligible for Title XIX matching payments in a State's section 1115 waiver in calculating the hospital's Medicare DSH adjustment.

One purpose of a section 1115 expansion waiver is to extend Title XIX matching payments to services furnished to populations that otherwise could not have been made eligible for Medicaid. The costs associated with these populations are matched based on section 1115 authority. In fact, section 1115(a)(2)(A) of the Act states that the "costs of such project which would not otherwise be included as expenditures under section * * * 1903 * * * shall, to the extent and for the period prescribed by the Secretary, be regarded as expenditures * * * approved under (Title XIX)." Thus, the statute allows for the expansion populations to be treated as Medicaid beneficiaries.

13

REG-ADOPT, MED-GUIDE 2000-1 MED-GUIDE-TB ¶180,075, Medicare Inpatient Disproportionate Share Hospital Adjustment Calculation., (Jan. 20, 2000)

COPYRIGHT 2001, CCH Incorporated

**11**

In addition, at the time that the Congress enacted the Medicare DSH adjustment, there were no approved section 1115 expansion waivers. Nonetheless, we believe allowing hospitals to include the section 1115 expanded waiver population in the Medicare DSH calculation is fully consistent with the Congressional goals of the Medicare DSH adjustment to recognize the higher costs to hospitals of treating low income individuals covered under Medicaid. Therefore, inpatient hospital days for these individuals eligible for Title XIX matching payments under a section 1115 waiver are to be included as Medicaid days for purposes of the Medicare DSH adjustment calculation.

In order to provide consistency in both components of the calculation, any days that are added to the Medicaid day count must also be added to the total day count, to the extent that they have not been previously so added.

Regardless of the type of allowable Medicaid day, the hospital bears the burden of proof and must verify with the State that the patient was eligible under one of the allowable categories during each day of the patient's stay. The hospital is responsible for and must provide adequate documentation to substantiate the number of Medicaid days claimed. Days for patients that cannot be verified by State records to have fallen within a period wherein the patient was eligible for Medicaid as described in this rule cannot be counted.

## III. Response to Comments

Because of the large number of items of correspondence we normally receive on Federal Register documents published for comment, we are not able to acknowledge or respond to them individually. We will consider all comments we receive by the date and time specified in the DATES section of this preamble, and, when we proceed with a subsequent document, we will respond to the comments in the preamble to that document.

## IV. Waiver of Proposed Rulemaking and 30-Day Delay in the Effective Date

We ordinarily publish a notice of proposed rulemaking in the Federal Register and invite public comment on the proposed rule. The notice of proposed rulemaking includes a reference to the legal authority under which the rule is proposed, and the terms and substances of the proposed rule or a description of the subjects and issues involved. This procedure can be waived, however, if an agency finds good cause that a notice-and-comment procedure is impracticable, unnecessary, or contrary to the public interest and incorporates a statement of the finding and its reasons in the rule issued.

We find that it would be contrary to the public interest to undertake prior notice and comment procedures before implementing this interim final rule with comment period. States that have approved section 1115 waivers are continually involved in critical efforts to implement, refine, and operate their Medicaid programs. For example, the States, managed care organizations, and hospitals are always considering their financial positions and the adequacy of rates paid between these critical partners. We believe this policy change impacts their financial positions. Therefore, we believe the extended period of uncertainty for hospitals and others that would result if this policy change were to go through proposed and final rulemaking could adversely affect the course of these critical efforts and thereby disrupt services to Medicaid beneficiaries and other low-income patients who are served by hospitals, especially safety net hospitals.

Moreover, because our prior guidance on certain aspects of our Medicare DSH policy was insufficiently clear, many hospitals in States with approved section 1115 expansion waivers have been receiving Medicare DSH payments reflecting the inclusion of expansion population patient days. But for an immediate effective date of this rule, these Medicare DSH payments will cease until completion of the notice and comment rulemaking process, and, as a result, many of these hospitals may experience financial difficulties that may adversely affect access to services by the low-income patients served by these safety net hospitals.

Therefore, we find good cause to waive the notice of proposed rulemaking and to issue this final rule on an interim basis. We are providing a 60-day comment period for public comment.

Also, we normally provide a delay of 30 days in the effective date of a regulation. However, if adherence to this procedure would be impracticable, unnecessary, or contrary to the public interest, we may waive the delay in the effective date. For the reasons discussed above, it is important that the provisions of this final rule with comment period have immediate effect in order to avoid a potential hardship for hospitals and a potential disruption of services for their patients.

## V. Collection of Information Requirements

Under the Paperwork Reduction Act of 1995 (PRA), we are required to provide 60-day notice in the Federal Register and

**14**

REG-ADOPT, MED-GUIDE 2000-1 MED-GUIDE-TB ¶180,075, Medicare Inpatient Disproportionate Share Hospital Adjustment Calculation., (Jan. 20, 2000)

12

COPYRIGHT 2001, CCH Incorporated

solicit public comment before a collection of information requirement is submitted to the Office of Management and Budget (OMB) for review and approval. In order to fairly evaluate whether an information collection should be approved by OMB, section 3506(c)(2)(A) of the Paperwork Reduction Act of 1995 requires that we solicit comment on the following issues:

- The need for the information collection and its usefulness in carrying out the proper functions of our agency.

- The accuracy of our estimate of the information collection burden.

- The quality, utility, and clarity of the information to be collected.

- Recommendations to minimize the information collection burden on the affected public, including automated collection techniques.

We are soliciting public comment on each of these issues for the following sections of this document that contain information collection requirements:

Section 412.106(b)(4) (ii) and (iii) contain information collection requirements that are subject to the PRA. The requirements are as follows:

In paragraph (b)(4)(ii), effective with discharges occurring on or after January 20, 2000, for purposes of counting days under paragraph (b)(4)(i) of this section, hospitals may include all days attributable to populations eligible for Title XIX matching payments through a waiver approved under section 1115 of the Social Security Act.

In paragraph (b)(4)(iii), the hospital has the burden of furnishing data adequate to prove eligibility for each Medicaid patient day claimed under paragraph (b)(4) and of verifying with the State that a patient was eligible for Medicaid during each claimed Medicaid day. We solicit comments on the burden associated with these requirements. Based upon the burden estimates received from the public, HCFA will add these new requirements and associated burden to the existing information collections entitled; "Medicaid Disproportionate Share Adjustment Procedure and Criteria" (OMB #0938-0691, HCFA-R-194, current expiration date 9/30/2002; and/or "Medicaid Disproportionate Share Hospital Payments--Institutions for Mental Disease" (OMB #0938-0746, HCFA-R-0266, current expiration date 6/30/2002.

If you comment on these information collection and recordkeeping requirements, please mail copies directly to the following:

Health Care Financing Administration, Office of Information Services, Information Technology Investment Management Group, Attn: Julie Brown, Room N2-14-26, 7500 Security Boulevard, Baltimore, MD 21244-1850. Office of Information and Regulatory Affairs, Office of Management and Budget, Room 10235, New Executive Office Building, Washington, DC 20503, Attn: Allison Herron Eydt, HCFA Desk Officer.

VI. Regulatory Impact Analysis

A. Introduction

Section 804(2) of title 5, United States Code (as added by section 251 of Public Law 104-121), specifies that a "major rule" is any rule that the Office of Management and Budget finds is likely to result in—

- An annual effect on the economy of $100 million or more.

- A major increase in costs or prices for consumers, individual industries, Federal, State, or local government agencies, or geographic regions; or

- Significant adverse effects on competition, employment, investment productivity, innovation, or on the ability of United States based enterprises to compete with foreign based enterprises in domestic and export markets.

We estimate that the impact of this interim final rule with comment period will exceed $100 million. Therefore, this rule is a major rule as defined in Title 5, United States Code, section 804(2).





# QUALITY REIMBURSEMENT SERVICE
## Healthcare Consultants

Via Federal Express

August 13, 2005

**FILE**
Group

Mr. Steven R. Kirsh
Director
Jurisdiction & Case Management Staff
Provider Reimbursement & Review Board
2520 Lord Baltimore Drive, Suite L
Baltimore, MD 21244-2670

Re:    Initial Request for Hearing -- Group Appeal
       Title of Group: QRS 2000 Section 1115 Waiver Days Group Appeal

Dear Mr. Kirsh:

The following referenced providers seek a hearing before the Provider Reimbursement Review Board (Board) pursuant to 42 C.F.R. 405.1835 and 405.1837. The aggregate amount of Medicare reimbursement in dispute for the group will exceed $50,000.

| PROV NO. | PROV NAME | FYE | NPR DATE | INTERMEDIARY | CASE # |
|----------|-----------|-----|----------|--------------|--------|
| 26-0040 | Cox Medical Center | 09/30/00 | 09/15/2003 | Mutual of Omaha | 04-0736 |
| 44-0063 | Johnson City Medical Center | 06/30/00 | 09/26/2002 | Riverbend, GBA | 03-0957 |

The common issue before the Board will be:

Whether the Intermediary's determination of DSH eligibility and/or the DSH adjustment, as required by the HCFA/CMS' unlawful interpretation of the DSH statute 42 U.S.C. § 1395ww(d)(5)f), to exclude Section 1115 Waiver days in the Medicaid days portion of the DSH calculation, violates the DSH statue.

The provider requests that the above issue be added to the pending individual appeals noted above, and that the issue be transferred to the Group Appeal. The individual appeals otherwise remain pending before the Board regarding other issues.

Sincerely,

J. C. Ravindran
President

cc:    Mr. Terry Gouger, Appeals Supervisor, Medicare Audit & Reimbursement, Mutual of Omaha Insurance Plaza, Lower Level 2, Omaha, NE 68131

       Mr. Wilson C. Leong, Director, Medicare Appeals, Blue Cross Blue Shield Association, 225 N. Michigan Avenue, Chicago, IL 60611
Enclosures
JCR:DR

17

*150 N. Santa Anita Avenue, Ste.570A, Arcadia, CA 91006 • Tel. (626) 445-5092 • Fax (626) 821-4488*
*Offices in : Spokane, Chicago, Colorado Springs, Detroit & Birmingham*



**DEPARTMENT OF HEALTH AND HUMAN SERVICES**
**PROVIDER REIMBURSEMENT REVIEW BOARD**
2520 Lord Baltimore Drive, Suite L
Baltimore MD 21244-2670
Phone: 410-786-2671              FAX: 410-786-5298

Suzanne Cochran, Chairperson
Gary B. Blodgett, D.D.S.
Elaine Crews Powell, CPA
Anjali Mulchandani-West

## CERTIFIED MAIL

Quality Reimbursement Services
J.C. Ravindran
President
150 N. Santa Anita Avenue, Suite 570A
Arcadia, CA 91006

AUG 1 8 2005



RE: Group Acknowledgement and Critical Due Dates
    Case Number: 05-1985G
    Group Name: QRS 2000 Section 115 Waiver Days Group
    Appealed Year – FYE: 9/30/2000
    Group Representative Name: Quality Reimbursement Services

The Provider Reimbursement Review Board ("Board") has received your request for a hearing. You will need to obtain a copy of the Board's instructions which are located on the Board's web site at http://www.cms.hhs.gov/providers/prrb/prrb.asp. If internet access is not available to you, you may call the Board at (410) 786-2671 and request that a copy be mailed to you.

You must reference the case number and provider information on all correspondence with the Board. If any of the above information is incorrect, you must inform the Board, in writing, within 30 days of this letter.

## DUE DATES

**1st of October 2006**
The Group Representative is to mail a letter to the Board stating that group is complete and identifying the lead intermediary.

**1st of December 2006**
The Group Representative must file a preliminary position paper with the lead intermediary (with a letter to the Board certifying that the preliminary due date has been met and a copy of the first page only of the preliminary position paper.) The Group Representative must also complete and submit the Schedule of Providers with associated jurisdictional documentation to the lead intermediary.

**1st of February 2007**
The lead intermediary must file a preliminary position paper with the Group Representative (with a letter to the Board certifying that the preliminary due date has been met and a copy of the first page only of the preliminary position paper.) The lead intermediary must also forward the Schedule of Providers, the associated jurisdictional documents and comments regarding jurisdiction to Board.

**1st of April 2007**
Final position papers due to the Board from both Parties.

13

## DISMISSALS

The group representative is responsible for pursuing the group appeal in accordance with the Board's procedures, which are outlined in the Board's Instructions. You must file all required documentation, including position papers, regardless of any outstanding jurisdictional challenges, motions or subpoena requests. If the group representative misses any of its due dates, the Board will dismiss the group appeal. The Board will not send a due date reminder. If the Intermediary fails to meet its deadlines, the Board will contact the Centers for Medicare and Medicaid Services (CMS) about contract compliance and will schedule a hearing date.

## TENTATIVE HEARING DATE

**August 2007:** Tentative month and year of hearing.

The Board will send the parties a Notice of Board Hearing to notify you of the specific time, date and location of the hearing. The Notice of Hearing will be issued at least 30 days prior to the actual hearing date.

## OPTIONS

You may make a written request, at any time, that:
      your month of hearing be rescheduled to an earlier month;
      your case be heard based on the submitted record;
      your case be conducted by video or teleconference;
      your case be resolved through alternative dispute resolution/mediation;
      your case be reviewed in a pre-hearing conference with a Board member.

The group representative must continue to follow the due dates set forth in this letter until the Board acknowledges the request.

Steven R. Kirsh, Director
Division of Jurisdiction & Case Management

cc:   Wilson C. Leong
      BC & BS Association
      225 North Michigan Avenue
      Chicago, IL  60601-7680

      Terry Gouger
      Mutual of Omaha Insurance Company
      P.O. Box 1604
      Omaha, NE  68101

19



Exhibit 2

20

# SCHEDULE OF PROVIDERS IN GROUP

| | |
|---|---|
| Group Name | QRS 2000 SECTION 1115 WAIVER DAYS GROUP APPEAL |
| Representative | QUALITY REIMBURSEMENT SERVICES |
| Case No. | 05-19856 |

Page No. ____ 1 ____ of ____ 1 ____

Date Prepared    October 21, 2005

Issue    Section 1115 Waiver Days Group Appeal

| Provider No. | Provider Name County, State | City, FYE | Intermediary | A Date of Final Determ | B Date of Hearing Request | C No. of Days Adj. | D Audit Adj. No. | E Approx. Amount | F Original Case No. | G Date of Add/Transfer |
|---|---|---|---|---|---|---|---|---|---|---|
| 1 26-0040 | Cox Medical Center Springfield, MO | 9/30/2000 | Mutual of Omaha Ins. | 9/15/2003 | 2/20/2004 | 158 | 56657 | 191,512 | 05-0736 | 8/13/2005 |
| 2 44-0063 | Johnson City Medical Center Johnson City, TN | 6/30/2000 | Riverbend, GBA | 9/26/2002 | 3/24/2003 | 179 | 30 | 1,595,320 | 03-0957 | 8/13/2005 |

TOTAL    1,786,832

Have copy of document

21

# QRS 2000 SECTION 1115 WAIVER DAYS GROUP APPEAL

## PRRB CASE NUMBER: 05-1985G

## PROVIDER NUMBERS: 26-0040 & 44-0063

## JURISDICTIONAL DOCUMENTS

---

### LIST OF EXHIBITS

RECEIVED

OCT 24 2005

### COX MEDICAL CENTER - # 26-0040

PROVIDER REIMBURSEMENT
REVIEW BOARD

| Tab A | : | Notices of Program Reimbursement |
| Tab B | : | Original Requests for Hearing |
| Tab D | : | Audit Adjustment Reports |
| Tab G | : | Tranfer/Add Letters |

### JOHNSON CITY MEDICAL CENTER - # 44-0063

| Tab A | : | Notices of Program Reimbursement |
| Tab B | : | Original Requests for Hearing |
| Tab D | : | Audit Adjustment Reports |
| Tab G | : | Tranfer/Add Letters |

22

## SCHEDULE OF PROVIDERS IN GROUP

Group Name **QRS 2000 SECTION 1115 WAIVER DAYS GROUP APPEAL**

Representative **QUALITY REIMBURSEMENT SERVICES**

Case No. **05-1985G**            Issue    Section 1115 Waiver Days Group Appeal

Page No. __1__ of __1__

Date Prepared    October 21, 2005

| Provider No. | Provider Name County, State | City | FTE | Intermediary | A Date of Final Determ | B Date of Hearing Request | C No. of Days | Audit Adj. No. | D Approx. Amount | E Original Case No. | F Date of Add/Transfer G |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 1  26-0040 | Cox Medical Center Springfield, MO | | 9/30/2000 | Mutual of Omaha Ins. | 9/15/2003 | 2/20/2004 | 158 | 56657 | 191,512 | 05-0736 | 8/13/2005 |
| 2  44-0063 | Johnson City Medical Center Johnson City, TN | | 6/30/2000 | Riverbend, GBA | 9/26/2002 | 3/24/2003 | 179 | 30 | 1,595,320 | 03-0957 | 8/13/2005 |
| | | | | | | TOTAL | | | 1,786,832 | | |

Have copy of document

23

Exhibit 1

Exhibit A

**CMS/**

CENTERS for MEDICARE & MEDICAID SERVICES

MUTUAL of OMAHA INSURANCE COMPANY
Medicare Area
P.O. Box 1604 • Omaha, NE 68101
1 866 734 9444
mutualmedicare.com
A CMS Contracted Intermediary

Mutual of Omaha

SEP 1 5 2003

## NOTICE OF PROGRAM REIMBURSEMENT

Mr. Larry Pennel, Dir. Mgmt. Services
Lester E. Cox Medical Centers
1423 N. Jefferson
Springfield, MO 65802

RE: Lester E. Cox Med. Centers
Provider No.: 26-0040, 26-T040, 26-S040, 26-5289, 26-8509, 26-8510, 26-3451, 26-3472, 26-3422, 26-3445, 26-2306, 26-2337, 26-3505, 26-3506, 26-3507, 26-3508, 26-3510
FYE: September 30, 2000

Dear Mr. Pennel:

This is your Notice of Program Reimbursement (NPR) for the cost reporting period October 1, 1999 through September 30, 2000 and is issued in accordance with 42 CFR 405.1803.

Enclosed as part of this notice is the Amended Cost Report, Audit Adjustment Report, Report of Audit, and Settlement Worksheet. The Settlement Worksheet summarizes the effect of any audit adjustments we made to the report you filed.

If you disagree with our determination, you have a right to request a hearing in accordance with 42 CFR 405.1801 - 405.1889. You may also want to refer to CMS Pub. 15-1, Chapter 29. The hearing request must be filed within 180 days following receipt of this NPR. Please keep in mind that routine issues may be resolved without going through the appeals process by providing clarification or additional documentation to us. However, if a formal appeal is necessary, an acceptable request must be in writing, be signed by a duly authorized representative of the provider and should:

(1)   identify the disputed issues by specific audit adjustments with which you disagree,
(2)   identify the amount of Program reimbursement in controversy for each issue and provide a calculation of each amount,
(3)   give specific reasons why you feel the adjustments are inappropriate,
(4)   be accompanied by evidentiary materials necessary to support your position, and
(5)   include a copy of the filed cost report, NPR, and audit adjustment report.

An Intermediary Hearing may be requested if the amount of Program reimbursement in controversy is at least $1,000 but less than $10,000. The request must be addressed to:

Form Letter2

26

Hearing Officer
Medicare Audit and Reimbursement
Mutual of Omaha Insurance Company
P.O. Box 1604
Omaha, Nebraska  68101

A Provider Reimbursement Review Board (PRRB) Hearing may be requested if the Amount of Program Reimbursement in controversy is at least $10,000.  A group of providers may request a PRRB Hearing where the matters in controversy involve a common question of fact, law, regulation or CMS ruling if each provider is entitled to a PRRB Hearing, (except for meeting the $10,000 requirement) and the amount in controversy is, in the aggregate, at least $50,000.  Any appeal of common issues filed by providers that are under common ownership or control must be brought before the PRRB as a group appeal.

The PRRB Hearing request must be addressed to:

Chairman
Provider Reimbursement Review Board
2520 Lord Baltimore Drive, Suite L
Baltimore, MD  21244-2670

Keep in mind that even though we may be working with you on an issue, you must file a formal appeal to protect your rights.  (Refer to our Newsletters for further details on hearing procedures).

The results of this determination have been forwarded to our Reimbursement Area.  You will be hearing from them soon.

Interest will accrue from the date of this determination and will either be charged on the overpayment balance or paid on the underpayment balance for each 30-day period that payment is delayed.  Periods of less than 30-days will be treated as a full 30-day period.  Interest assessments will be avoided if the over/underpayment balances are paid in full, within 30-days of the date of this determination.  Refer to 42 CFR 405.378(b)(2).

Please contact Rendall Alexander at our St. Louis Office, if you have questions regarding this settlement. The telephone number is 1-314-997-6626, Extension 230.

Sincerely,


Tabetha Smith
Audit Supervisor
Medicare Audit and Reimbursement
Mutual of Omaha Insurance Company

TS:hl

Enc

Cc:    Title XIX

Cc:    Mutual Of Omaha St. Louis Field Office

27

Exhibit B

28

# QUA  ITY REIMBURSEMENT SERVICES
## Healthcare Consultants

<u>Via United Parcel Service</u>



February 20, 2004

Suzanne Cochran, Esq.
Chairperson
Provider Reimbursement Review Board
2520 Lord Baltimore Drive, Suite L
Baltimore, MD 21244-2670

**FILE**
Client

Re:    **Provider Name**      :  **LESTER E. COX MEDICAL CENTER**
         **Provider Number**    :  **26-0040**
         **Intermediary**         :  **Mutual of Omaha Insurance Company**
         **Request for Medicare Appeal**

## NOTICE OF CORRECTION - PROGRAM REIMBURSEMENT

| <u>Notice Date</u> | <u>Fiscal Year</u> |
|---|---|
| September 15, 2003 | September 30, 2000 |

Dear Ms. Cochran:

The hospital respectfully appeals the under mentioned determinations of the Intermediary contained in the above NPR.

Issue  1 :  **Disproportionate Share Payment**

    **SSI Proxy**

The Provider contends that the Intermediary did not determine Medicare DSH reimbursement in accordance with the statutory instructions at 42 U.S.C. 1395ww(d)(5)(F)(i). Specifically, the provider disagrees with the intermediary's calculation of the computation of the disproportionate patient percentage set forth at 42 C.F.R. 412.106(b)(2)(i) of the Secretary's regulations. The provider contends that the intermediary did not furnish the matching data from which the SSI proxy had been derived, and that this validation information has been withheld on the basis of a statement in the commentary to the 1995 final rule for inpatient PPS. See 60 <u>Fed. Reg.</u> 45811-12 (Sept. 1 1995). The statement indicates that the SSI eligibility data used for this DSH calculation is not available to verify provider's disproportionate patient percentage because it is protected by the Privacy Act. The intermediary cannot support its reliance on a statement that occurs in the preamble of a published rule but is not supported by the regulatory text or by the authorizing statute.

A system of records entitled Medicare Provider Analysis and Review ("MEDPAR"), HHS/HCFA/OIS, 09-07-009 was published in the Federal Register on August 18, 2000, 65 Fed. Reg. 50548 (August 18, 2000). This system of records was purported to establish a system to collect and disseminate the information necessary "to recalculate Supplemental Security Income ("SSI") ratios for hospitals that are paid under the [Prospective Payment System] and serve a disproportionate share of low-income patients." Id. This data is a key component in determining whether affected hospitals may be entitled to increased reimbursement under Part A of the Medicare program. The regulations impose restrictive conditions that do not permit the

*150 N. Santa Anita Avenue, Ste.570A, Arcadia, CA 91006 • Tel. (626) 445-5092 • Fax (626) 821-4488*
*Offices in : Spokane. Chicago. Colorado Springs. Detroit & Birmingham*

29

Suzanne Cochran, Esq.
February 20, 2004
Page 2 of 2

provider to obtain and reconcile the SSI data maintained by CMS with provider records. Provider therefore contends that this is not in conformance with the statutory provisions of DSH reimbursement.

Reimbursement Amount: $118,400

The Provider will be personally represented at the requested hearing by its designated representative.

If you have any questions, please feel free to contact us.

Sincerely,

J. C. Ravindran
President

cc:    Mr. Thomas Bruce, Audit Supervisor, Medicare Audit & Reimbursement, Mutual of Omaha Insurance Company, Mutual of Omaha Plaza, Lower Level 2, Omaha, NE 68131.

Mr. Wilson Leong, PRRB Appeals Coordinator, Blue Cross Blue Shield Association, 225 N. Michigan Avenue, Chicago, IL 60611

Mr. Larry D. Pennel, Chief Financial Officer, Cost Health Systems, 3800 S. National Avenue, Suite 440, Springfield, MO 65807.

Encl.

JCR:DR

30



**CERTIFIED MAIL**

February 20, 2004

Suzanne Cochran, Esq.
Chairperson
Provider Reimbursement Review Board
2520 Lord Baltimore Drive, Suite L
Baltimore, MD 21244-2670

| Re: | Provider Name | : | Lester E. Cox Medical Center |
|-----|---------------|---|------------------------------|
|     | Provider Number | : | 26-0040 |
|     | Fiscal Year Ended | : | September 30, 2000 |

Dear Ms. Cochran:

In accordance with section 2922 et seq. Part 1, Chapter 20 of the Provider Reimbursement Review Board Manual, we wish to authorize the under mentioned person to represent the Hospital on the appeal relating to the above fiscal year end.

J. C. Ravindran, CPA
President
Quality Reimbursement Services
150 N. Santa Anita Avenue, Ste. 570A
Arcadia, CA 91006

If you have any questions, please feel free to contact me at (417) 269-8811.

Sincerely,

Larry D. Pennel
Chief Financial Officer

cc: Mr. Arlen Mieras, Manager, Technical Support, Appeals & Reopenings, Mutual of Omaha Insurance Company, Mutual of Omaha Plaza, Lower Level 2, Omaha, NE 68131

Cox Medical Plaza II · 3850 South National Avenue · Springfield, Missouri 65807
www.coxhealth.com

Cox South · Cox Walnut Lawn · Cox North · Cox Monett · Burrell Behavioral Health · Ferrell-Duncan Clinic · Oxford HealthCare · Home Parenteral Services
Primrose Place · Regional Services · Lester L. Cox College of Nursing and Health Services · Cox Healthcare Foundation

An Equal-Opportunity-Affirmative Action Employer. Services provided on a nondiscriminatory basis. Patient admissions, room assignments, and patient services are provided
without regard to race, color, national origin, disability or age.

31

Exhibit D

MAR-15-04  18:02    FROM-EXECUTIVE OFFICE                417-269-3104          T-234  P.07/08  F-801
CHC HEALTH SYSTEMS
NO. : 24-0069

| FOR PROV LINE | COL | DESCRIPTION | PER VALUE | DIFFERENCE | NEW VALUE | TYPE |
|---|---|---|---|---|---|---|
| | | ************** ADJUSTMENT NO. 52 ************** REF: 52 | | | | |
| 38.06 1 | | RANTE CODE (A/B): | | | A | R |
| 38.06 2 | | ADJUSTMENT AMOUNT: | 0 | -122,045 | -122,045 | R |
| 38.06 4 | | Z&E SERVICES-SALARY & FRINGE | 0.00 | | 23.00 | R |
| 38.06 5 | | A-7 REFERENCE | 0 | | 0 | R |

************** ADJUSTMENT NO. 51 ************** REF: 51
To offset interest expense per the G/L relative to monies
borrowed to fund the purchase of St. John's a laundry. Funded
depreciation was clearly available and therefore reflects
this as be treated as unnecessary borrowing.
Reference: CMS Pub. 15-1, Section 202.1, 42 CFR 413.153
****WORK PAPER REFERENCE: V-2.3

| | | | | | | |
|---|---|---|---|---|---|---|
| 38 0 | | EXPLANATION: | MED ADJ 043 - SEE LINES | | MED. ADJ.043 - ST.JOHN'S LAUNDRY INTER | A |
| 38 1 | | RANTE CODE (A/B): | | | A | A |
| 38 2 | | ADJUSTMENT AMOUNT: | 3,988 | -12,480 | -8,472 | A |
| 38 3 | | OTHER ADMINISTRATIVE & GENERAL | 3.00 | | 0.03 | A |
| 38 5 | | A-7 REFERENCE | 0 | | 0 | R |

************** ADJUSTMENT NO. 54 ************** REF: 54
To adjust depreciation and carry in accordance with
Intermediary cost results.
Reference: CMS Pub.15, Section 236.6, 42 CFR 155
Reference: CMS Pub. 15-3, Section 3113.8 & 3663
****WORK PAPER REFERENCE: V-1

| | | | | | | |
|---|---|---|---|---|---|---|
| 1 1 | ROAP 35 | 0 | DEPRECIATION AND DATE | 8,009 | -537 | 7,372 | A |

************** ADJUSTMENT NO. 53 ************** REF: 53
To adjust the allowable cost keeping related party cost to
eliminate 'other income' from allowable cost.
Reference: CMS Pub.15-1, Section 2134.1
****WORK PAPER REFERENCE: G-1

| | | | | | | |
|---|---|---|---|---|---|---|
| .01A 1 | 1 | LINE NUMBER: | | | 0.05 | R |
| .01A 1 | 3 | EXPENSE ITEM: | ADMINISTRATIVE | | ADMINISTRATIVE | R |
| .01A 1 | 4 | AMOUNT ALLOWANCE: | 4,908 | -830 | 4,078 | R |
| .01A 1 | 5 | AMOUNT: | 208,323 | 0 | 208,323 | R |
| .01A 1 | 7 | A-7 REFERENCE | 0 | | 0 | R |

| | | | | | | |
|---|---|---|---|---|---|---|
| .01A 2 | 1 | LINE NUMBER: | | | 0.00 | R |
| .01A 2 | 3 | EXPENSE ITEM: | REPAIRS & MAINTENANCE | | REPAIRS & MAINTENANCE | R |
| .01A 2 | 4 | AMOUNT ALLOWANCE: | 9,318 | 76 | 9,394 | R |
| .01A 2 | 5 | AMOUNT: | 0 | 0 | 0 | R |
| .01A 2 | 7 | A-7 REFERENCE | 0 | | 0 | R |

| | | | | | | |
|---|---|---|---|---|---|---|
| .01A 3 | 1 | LINE NUMBER: | | | 0.00 | R |
| .01A 3 | 3 | EXPENSE ITEM: | DEPRECIATION-EQUIPMENT | | DEPRECIATION-EQUIPMENT | R |
| .01A 3 | 4 | AMOUNT ALLOWANCE: | 8,873 | 35 | 8,912 | A |
| .01A 3 | 5 | AMOUNT: | 0 | 0 | 0 | R |
| .01A 3 | 7 | A-7 REFERENCE | 0 | | 0 | R |

| | | | | | | |
|---|---|---|---|---|---|---|
| .01A 4 | 1 | LINE NUMBER: | | | 41.00 | R |
| .01A 4 | 3 | EXPENSE ITEM: | RADIOLOGY | | RADIOLOGY | R |
| .01A 4 | 4 | AMOUNT ALLOWANCE: | 35,105 | -293 | 34,832 | R |
| .01A 4 | 5 | AMOUNT: | 0 | 0 | 0 | R |
| .01A 4 | 7 | A-7 REFERENCE | 0 | | 0 | R |

************** ADJUSTMENT NO. 56 ************** REF: 56
To adjust DRG to reflect updated data verified by the
Intermediary and Version eligibility match report.
42 CFR 412.106
****WORK PAPER REFERENCE: A

| | | | | | | |
|---|---|---|---|---|---|---|
| 53 1 | ROAP 1 | 6 | ADULTS & PEDIATRICS | 21,577 | 363 | 21,940 | R |
| 53 1 | ROAP 6 | 5 | INTENSIVE CARE UNIT | 2,065 | 35 | 2,100 | R |
| 53 1 | RDAY 10 | 3 | ICU NURSERY | 4,295 | 72 | 4,367 | R |
| 53 1 | RDAY 11 | 3 | NURSERY | 3,371 | 57 | 3,428 | R |
| Σ A 18 | ROAP 4.06 | 3 | Disproportionate share adjus | 8,143,260 | 172,849 | 8,316,069 | R |

************** ADJUSTMENT NO. 57 ************** REF: 57
To adjust capital payments to reflect updated data.
Reference: CMS Pub.15-1, Section 2304, 42 CFR 413.26
****WORK PAPER REFERENCE: T-1

| | | | | | | |
|---|---|---|---|---|---|---|
| L 2 13 | ROAP 8 | 1 | Total capital payments under | 6,855,365 | 37,396 | 6,733,742 | R |
| L 4 13 | ROAP 11 | 1 | Carryover of accumulated capi | 0 | -8,446,833 | -8,446,833 | R |

33

**COX MEDICAL CENTER**
**Provider Number: 26-0040**
**DSH Calculation**
**Fiscal Year Ended: 09/30/2000**

**Impact of 550 Section 1115 Waiver Days**

| | | | |
|---|---|---|---|
| Increase in Medicaid Proxy | (1) | **550** | 0.40412056% |
| | | **136,098** | |
| DRG | (2) | | $57,442,284 |
| Multiplier | (3) | | 82.50% |
| Net Impact | (1) x (2) x (3) | | $    191,512 |

34

Exhibit 6

# QU...ITY REIMBURSEMENT SERVICE.
## Healthcare Consultants

**Via Federal Express**

August 13, 2005

**FILE**
*Group*

Mr. Steven R. Kirsh
Director
Jurisdiction & Case Management Staff
Provider Reimbursement & Review Board
2520 Lord Baltimore Drive, Suite L
Baltimore, MD  21244-2670

Re:    **Initial Request for Hearing – Group Appeal**
       **Title of Group: QRS 2000 Section 1115 Waiver Days Group Appeal**

Dear Mr. Kirsh:

The following referenced providers seek a hearing before the Provider Reimbursement Review Board (Board) pursuant to 42 C.F.R. 405.1835 and 405.1837.  The aggregate amount of Medicare reimbursement in dispute for the group will exceed $50,000.

| PROV NO. | PROV NAME | FYE | NPR DATE | INTERMEDIARY | CASE # |
|----------|-----------|-----|----------|--------------|--------|
| 26-0040 | Cox Medical Center | 09/30/00 | 09/15/2003 | Mutual of Omaha | 04-0736 |
| 44-0063 | Johnson City Medical Center | 06/30/00 | 09/26/2002 | Riverbend, GBA | 03-0957 |

The common issue before the Board will be:

> Whether the Intermediary's determination of DSH eligibility and/or the DSH adjustment, as required by the HCFA/CMS' unlawful interpretation of the DSH statute 42 U.S.C. § 1395ww(d)(5)f), to exclude Section 1115 Waiver days in the Medicaid days portion of the DSH calculation, violates the DSH statue.

The provider requests that the above issue be added to the pending individual appeals noted above, and that the issue be transferred to the Group Appeal.  The individual appeals otherwise remain pending before the Board regarding other issues.

Sincerely,

*J. C. Ravindran*

J. C. Ravindran
President

cc:    Mr. Terry Gouger, Appeals Supervisor, Medicare Audit & Reimbursement, Mutual of Omaha Insurance Plaza, Lower Level 2, Omaha, NE 68131

       Mr. Wilson C. Leong, Director, Medicare Appeals, Blue Cross Blue Shield Association, 225 N. Michigan Avenue, Chicago, IL 60611

Enclosures
JCR:DR

*150 N. Santa Anita Avenue, Ste.570A, Arcadia, CA 91006 • Tel. (626) 445-5092 • Fax (626) 821-4488*
*Offices in : Spokane, Chicago, Colorado Springs, Detroit & Birmingham*

36

Exhibit 2

Exhibit A

38

03/21/2003  16:25     3--392-7676          IPMC BUSINESS OFFICE            PAGE  02

# JOHNSON CITY MEDICAL CENTER

FERFAID PRINT 01/01/1999 TO 06/30/2000

IN LIEU OF FORM CMS-2552-96 (11/98)

VERSION: 02.02
09/18/2002 15:41:39

HOSPITAL AND HOSPITAL HEALTH CARE COMPLEX COST REPORT
CERTIFICATION AND SETTLEMENT SUMMARY

WORKSHEET S
PARTS I & II

INTERMEDIARY
USE ONLY:

[ ] AUDITED
[ XX ] DESK REVIEWED

DATE RECEIVED      12/27/2000
INTERMEDIARY NO.    04839

[ ] INITIAL
[ XX ] FINAL

[ ] RE-OPENING

PART I - CERTIFICATION

MISREPRESENTATION OR FALSIFICATION OF ANY INFORMATION CONTAINED IN THIS COST REPORT MAY BE PUNISHABLE BY CRIMINAL, CIVIL
AND ADMINISTRATIVE ACTION, FINE AND/OR IMPRISONMENT UNDER FEDERAL LAW. FURTHERMORE, IF SERVICES IDENTIFIED IN THIS REPORT
WERE PROVIDED OR PROCURED THROUGH THE PAYMENT DIRECTLY OR INDIRECTLY OF A KICKBACK OR WHERE OTHERWISE ILLEGAL,
CIVIL AND ADMINISTRATIVE ACTION, FINES AND/OR IMPRISONMENT MAY RESULT.

CHECK
APPLICABLE BOX

— ELECTRONICALLY FILED COST REPORT
— MANUALLY SUBMITTED COST REPORT

CERTIFICATION BY OFFICER OR ADMINISTRATOR OF PROVIDER(S)

I HEREBY CERTIFY THAT I HAVE READ THE ABOVE STATEMENT AND THAT I HAVE EXAMINED THE ACCOMPANYING ELECTRONICALLY FILED
OR MANUALLY SUBMITTED COST REPORT AND THE BALANCE SHEET AND STATEMENT OF REVENUE AND EXPENSES PREPARED BY
JOHNSON CITY MEDICAL CENTER (44-0063)                    (PROVIDER NAME(S) AND NUMBER(S)) FOR THE COST REPORTING PERIOD
BEGINNING 07/01/1999 AND ENDING 06/30/2000, AND THAT TO THE BEST OF MY KNOWLEDGE AND BELIEF, IT IS A TRUE, CORRECT AND
COMPLETE STATEMENT PREPARED FROM THE BOOKS AND RECORDS OF THE PROVIDER IN ACCORDANCE WITH APPLICABLE INSTRUCTIONS EXCEPT
AS NOTED. I FURTHER CERTIFY THAT I AM FAMILIAR WITH THE LAWS AND REGULATIONS REGARDING THE PROVISION OF HEALTH CARE
SERVICES AND THAT THE SERVICES IDENTIFIED IN THIS COST REPORT WERE PROVIDED IN COMPLIANCE WITH SUCH LAWS AND REGULATIONS.

DATE: ____
TIME: ____

(SIGNED) ____

OFFICER OR ADMINISTRATOR OF PROVIDER(S)

TITLE ____

DATE ____

PART II - SETTLEMENT SUMMARY

| | TITLE V | TITLE XVIII | | | TITLE XIX |
|---|---|---|---|---|---|
| | 1 | PART A 2 | PART A 3 | PART B 3 | 4 |
| 1 HOSPITAL | | 344989 | | | 1 |
| 2 SUBPROVIDER I | | -596925 | | 81242 | 2 |
| 3 SUBPROVIDER I | | 1593161 | | | 3 |
| 4 SNF BED - SNF | | | | | 4 |
| 5 SNF BED - NF | | | | | 5 |
| 6 SKILLED NURSING FACILITY | | | | | 6 |
| 6 NURSING FACILITY | | | | | 6 |
| 7 HOME HEALTH AGENCY I | | 419266 | | 265142 | 7 |
| 7.03 HOME HEALTH AGENCY II | | 8696 | | -24879 | 7.03 |
| 8 OUTPATIENT REHABILITATION PROVIDER | | | | | 8 |
| 9 HEALTH CLINIC | | | | | 9 |
| 100 TOTAL | | 294389 | | 828402 | 100 |

THE ABOVE AMOUNTS REPRESENT "DUE TO" OR "DUE FROM" THE APPLICABLE PROGRAM FOR THE ELEMENT OF THE ABOVE COMPLEX INDICATED.

PREPARED BY INTERMEDIARY

SEP 2 6 2002

FINAL

40

PRINTED FROM 07/01/1999 TO 06/30/2000

HOSPITAL AND HEALTH CARE COMPLEX STATISTICAL DATA

IN LIEU OF FORM CMS-2552-96 (9/2000)

VERSION: 02.02
09/18/2002 15:41:59

WORKSHEET S-3
PART I

|  |  |  |  | ---IP DAYS / O/P VISITS / TRIPS--- |  |  | ---INTERNS & RES FTES--- |  |
| COMPONENT | NO. OF BEDS 1 | BED DAYS AVAILABLE 2 | TITLE V 3 | TITLE XVIII 4 | TITLE XIX 5 | TOTAL ALL PATIENTS 6 | TOTAL 7 | LESS I & R REN, NON-PHYS ANES 8 | NET 9 |
|---|---|---|---|---|---|---|---|---|---|
| HOSPITAL ADULTS & PEDS, EXCL SWING BED, OBSERV & HOSPICE DAYS | 296 | 108336 |  | 48577 |  | 79549 |  |  | 1 |
| HMO |  |  |  |  |  |  |  |  | 2 |
| HOSPITAL ADULTS & PEDS - |  |  |  |  |  |  |  |  | 3 |
| SWING BED SNF |  |  |  |  | 15630 |  |  |  | 4 |
| SWING BED NF |  |  |  |  |  |  |  |  | 5 |
| TOTAL ADULTS & PEDS - |  |  |  |  |  |  |  |  | 6 |
| EXCL OBSERVATION BEDS | 296 | 108336 |  | 48577 |  | 79549 |  |  | 7 |
| INTENSIVE CARE UNIT | 42 | 15372 |  | 6189 |  | 11865 |  |  | 8 |
| CORONARY CARE UNIT |  |  |  |  |  |  |  |  | 9 |
| BURN INTENSIVE CARE UNIT |  |  |  |  |  |  |  |  | 10 |
| SURGICAL INTENSIVE CARE UNIT |  |  |  |  |  |  |  |  | 11 |
| NEONATAL INTENSIVE CARE | 20 | 7330 |  |  |  | 6446 |  |  | 12 |
| NURSERY |  | 6500 |  |  |  | 8277 |  |  | 13 |
| TOTAL HOSPITAL | 358 | 137616 |  | 51536 |  | 99675 | 71.82 | 71.82 | 14 |
| RPCH VISITS |  |  |  |  |  |  |  |  | 15 |
| SUBPROVIDER | 60 | 21960 |  | 12719 |  | 14266 |  |  | 16 |
| SKILLED NURSING FACILITY | 34 | 12444 |  | 9694 |  | 11835 |  |  | 17 |
| NURSING FACILITY |  |  |  |  |  |  |  |  | 18 |
| OTHER LONG TERM CARE |  |  |  |  |  |  |  |  | 18.01 |
| HOME HEALTH AGENCY |  |  |  | 41162 |  | 55094 |  |  | 20 |
| HOME HEALTH AGENCY II |  |  |  | 9179 |  | 16477 |  |  | 21 |
| ASC (DISTINCT PART) |  |  |  |  |  |  |  |  | 22 |
| HOSPICE (DISTINCT PART) |  |  |  |  |  |  |  |  | 23 |
| O/P REHAB PROVIDER |  |  |  |  |  |  |  |  | 24 |
| RHC I |  |  |  |  |  |  |  |  | 25 |
| TOTAL | 452 |  |  |  |  | 5752 | 71.82 | 71.82 | 26 |
| OBSERVATION BED DAYS |  |  |  |  |  |  |  |  | 27 |
| AMBULANCE TRIPS |  |  |  |  |  |  |  |  | 28 |
| EMPLOYEE DISCOUNT DAYS |  |  |  |  |  |  |  |  |  |

PERIOD FROM 07/01/1999 TO 06/30/2000

HOSPITAL AND HEALTH CARE COMPLEX STATISTICAL DATA

IN LIEU OF FORM CMS-2552-96 (9/2010)

VERSION: 02.02
09/18/2002 15:41:39
WORKSHEET S-3
PART I
(CONTINUED)

| COMPONENT | FULL TIME EQUIV-- EMPLOYEES ON PAYROLL 10 | NONPAID WORKERS 11 | TITLE V 12 | TITLE XVIII 13 | DISCHARGES TITLE XIX 14 | TOTAL ALL PATIENTS 15 |
|---|---|---|---|---|---|---|
| 1 HOSPITAL ADULTS & PEDS, EXCL. | | | | | | |
| 2 SWING BED, OBSERV & HOSPICE DAYS | | | | | | |
| 3 HMO XIX | | | | | | |
| 4 HOSPITAL ADULTS & PEDS - | | | | 9159 | 3925 | 20375 |
| 5 SWING BED SNF | | | | | | |
| HOSPITAL ADULTS & PEDS - | | | | | | |
| TOTAL ADULTS & PEDS | | | | | | |
| 6 EXCL OBSERVATION BEDS | | | | | | |
| 7 INTENSIVE CARE UNIT | | | | | | |
| 8 CORONARY CARE UNIT | | | | | | |
| 9 BURN INTENSIVE CARE UNIT | | | | | | |
| 10 SURGICAL INTENSIVE CARE UNIT | | | | | | |
| NEONATAL INTENSIVE CARE | | | | | | |
| NURSERY | | | | | | |
| 11 TOTAL HOSPITAL | 2277.02 | | | 9189 | 3923 | 20375 |
| 12 RPCH VISITS | | | | | | |
| 13 SUBPROVIDER | | | | | | |
| 14 SKILLED NURSING FACILITY | 67.44 | | | 922 | | 1216 |
| 15 NURSING FACILITY | 40.89 | | | | | |
| 16 OTHER LONG TERM CARE | | | | | | |
| 17 HOME HEALTH AGENCY | 80.17 | | | | | |
| 18 HOME HEALTH AGENCY II | 12.62 | | | | | |
| 18.01 ASC (DISTINCT PART) | | | | | | |
| HOSPICE (DISTINCT PART) | | | | | | |
| D/P REHAB PROVIDER | | | | | | |
| RHC I | | | | | | |
| TOTAL | 2478.34 | | | | | |
| OBSERVATION BED DAYS | | | | | | |
| AMBULANCE TRIPS | | | | | | |
| EMPLOYEE DISCOUNT DAYS | | | | | | |

42

CALCULATION OF REIMBURSEMENT SETTLEMENT

IN LIEU OF FORM CMS-2552-96 (5/1999)

09/10/2002  15:01:359

WORKSHEET PART A

PREPARED  01/01/1999 TU 09/30/2100

## PART A - INPATIENT HOSPITAL SERVICES UNDER PPS

| Line | Description | HOSPITAL (44-9063) | SUB I | SUB II | SUB III | SUB IV | WORKSHEET PART A |
|---|---|---|---|---|---|---|---|
| 1 | DRG AMOUNT | 27556965 | | | | | 1 |
| 1.01 | OTHER THAN OUTLIER PAYMENTS OCCURRING BEFORE OCTOBER 1 | 1266275# | | | | | 1.01 |
| 1.02 | OTHER THAN OUTLIER PAYMENTS OCCURRING ON OR AFTER OCTOBER 1 AND BEFORE JANUARY 1 | 1228S913 | | | | | 1.02 |
| 1.03 | OTHER THAN OUTLIER PAYMENTS OCCURRING ON OR AFTER JAN 1 | | | | | | 1.03 |
| 1.04 | PAYMENTS PRIOR TO MARCH 1 OR OCTOBER 1 | | | | | | 1.04 |
| 1.05 | PAYMENTS ON OR AFTER OCTOBER 1 AND PRIOR TO JANUARY 1 | | | | | | 1.05 |
| 1.06 | PAYMENTS ON OR AFTER JAN 1 BUT BEFORE APR 1/OCT 1 | | | | | | 1.06 |
| 1.07 | ADDITIONAL AMOUNT RECEIVED OR TO BE RECEIVED | | | | | | 1.07 |
| 1.08 | SIMULATED PAYMENTS FROM THE FSSR ON OR AFTER APRIL 1, 2001 THROUGH SEPTEMBER 30, 2001 | | | | | | 1.08 |
| 2 | OUTLIER PAYMENTS ON OR AFTER OCTOBER 1, 1997 | | | | | | 2 |
| 2.01 | INDIRECT MEDICAL EDUCATION ADJUSTMENT | 3721258 | | | | | 2.01 |
| 3 | BED DAYS AVAILABLE DIVIDED BY NO. OF DAYS IN CR PERIOD | 342.28 | | | | | 3 |
| 3.01 | INDIRECT MEDICAL EDUCATION PERCENTAGE WORKSHEET S-3, PART I | | | | | | 3.01 |
| 3.02 | INDIRECT MEDICAL EDUCATION ADJUSTMENT | | | | | | 3.02 |
| 3.03 | | | | | | | 3.03 |
| 3.04 | FTE COUNT FOR ALLOPATHIC AND OSTEOPATHIC PGMS FOR THE MOST RECENT CR PERIOD ENDING ON OR BEFORE DEC 31, 1996 | | | | | | 3.04 |
| 3.05 | FTE COUNT FOR ALLOPATHIC AND OSTEOPATHIC PGMS WHICH MEET THE CRITERIA FOR AN ADD-ON TO THE CAP FOR NEW PROGRAMS IN ACCORDANCE WITH SECTION 1886(G)(5)(B)(v,iii) | 63.96 | | | | | 3.05 |
| 3.16 | ADJUSTED FTE COUNT FOR ALLOPATHIC AND OSTEOPATHIC PGMS FOR AFFILIATED PROGRAMS IN ACCORDANCE WITH SECTION 1886(G)(5)(B)(v,iii) | | | | | | 3.16 |
| 5.07 | SUM OF LINES 3.04 THROUGH 3.16 | 63.96 | | | | | 3.07 |
| 5.08 | FTE COUNT FOR ALLOPATHIC AND OSTEOPATHIC PROGRAMS IN FOR CR PERIODS BEGINNING BEFORE OCTOBER 1, ENTER THE PERCENTAGE OF DISCHARGES OCCURRING PRIOR TO OCTOBER 1 | 71.82 | | | | | 3.08 |
| 5.09 | PERCENTAGE OF DISCHARGES OCCURRING PRIOR TO OCTOBER 1 | | | | | | 3.09 |
| 5.10 | FOR CR PERIODS BEGINNING BEFORE OCTOBER 1, ENTER THE PERCENTAGE OF DISCHARGES OCCURRING ON OR AFTER OCT. 1 | | | | | | 3.10 |
| 3.11 | FTE COUNT FOR THE PERIOD IDENTIFIED IN LINE 3.09 | | | | | | 3.11 |
| 3.12 | FTE COUNT FOR THE PERIOD IDENTIFIED IN LINE 3.10 | | | | | | 3.12 |
| 3.13 | FTE COUNT FOR RESIDENTS IN DENTAL & PODIATRIC PROGRAMS | | | | | | 3.13 |
| 3.14 | CURRENT YEAR ALLOWABLE FTE | | | | | | 3.14 |
| 3.15 | TOTAL ALLOWABLE FTE COUNT FOR THE PRIOR YEAR, IF NONE ENTER 1 HERE. | 63.96 | | | | | 3.15 |
| 3.16 | TOTAL ALLOWABLE FTE COUNT FOR THE PENULTIMATE YEAR IF THAT YEAR ENDED ON OR AFTER SEPTEMBER 30, 1997, BUT PRIOR YEAR TEACHING WAS IN EFFECT ENTER 1 HERE. OTHERWISE ENTER ZERO. IF THERE WAS NO FTE COUNT IN THIS PERIOD BUT PRIOR YR TEACHING WAS IN EFFECT ENTER 1 HERE. | 59.42 | | | | | 3.16 |
| 3.17 | SUM OF LINES 3.14 THROUGH 3.16 DIVIDED BY THE NUMBER OF THOSE LINES IN EXCESS OF ZERO | 62.5X | | | | | 3.17 |

43

CALCULATION OF REIMBURSEMENT SETTLEMENT

IN LIEU OF FORM CMS-2552-96 (9/1999)

19/18/2012 18:41:39

WORKSHEET E PART A (CONT)

PART A - INPATIENT HOSPITAL SERVICES UNDER PPS

| | HOSPITAL (44-0155) | SUB I | SUB II | SUB III | SUB IV | |
|---|---|---|---|---|---|---|
| 5.18 CURRENT YEAR RESIDENT TO BED RATIO | 0.182628 | | | | | 5.18 |
| 5.19 PRIOR YEAR RESIDENT TO BED RATIO | 0.195266 | | | | | 5.19 |
| 5.20 FOR COST REPORTING PERIODS BEGINNING ON OR AFTER OCTOBER 1, 1997, ENTER THE LESSER OF LINES 3.18 OR 3.19 | 0.182628 | | | | | 5.20 |
| 3.21 IME PAYMENTS FOR DSCHG OCCURRING PRIOR TO OCTOBER 1 | 1417464 | | | | | 3.21 |
| 3.22 IME PAYMENTS FOR DSCHG AFTER SEP 30 BUT BEFORE JAN 1 | 1381821 | | | | | 3.22 |
| 3.23 IME PAYMENTS FOR DSCHG OCCURRING ON OR AFTER JANUARY 1. | 5103886 | | | | | 3.23 |
| 3.24 SUM OF LINES 3.21 THROUGH 3.23 | 5903161 | | | | | 3.24 |
| 4 DISPROPORTIONATE SHARE ADJUSTMENT | | | | | | 4 |
| 4.01 PERCENTAGE OF SSI RECIPIENT PATIENT DAYS TO MEDICARE PART A PATIENT DAYS | | | | | | 4.01 |
| 4.02 SUM OF 4 AND 4.01 | | | | | | 4.02 |
| 4.05 ALLOWABLE DISPROPORTIONATE SHARE PERCENTAGE | | | | | | 4.05 |
| 4.04 DISPROPORTIONATE SHARE ADJUSTMENT | | | | | | 4.04 |
| 5 ADDITIONAL PAYMENT FOR HIGH PERCENTAGE OF ESRD BENEFICIARY DISCHARGES | 6676609 | | | | | 5 |
| 5.01 TOTAL MEDICARE DISCHARGES ON WKST S-3, PART I EXCLUDING DISCHARGES FOR DRGs 302, 316 AND 317 | 68786434 | | | | | 5.01 |
| 5.02 DIVIDE LINE 5.01 BY LINE 5 | | | | | | 5.02 |
| 5.03 TOTAL ESRD MEDICARE DISCHARGES EXCLUDING DRGs 302, | | | | | | 5.03 |
| 5.04 TOTAL MEDICARE ESRD INPATIENT DAYS EXCLUDING DRGs | | | | | | 5.04 |
| 5.05 RATIO OF AVERAGE LENGTH OF STAY TO ONE WEEK | | | | | | 5.05 |
| 5.15 AVERAGE WEEKLY COST FOR DIALYSIS TREATMENTS | | | | | | 5.05 |
| 6.16 TOTAL ADDITIONAL PAYMENT | | | | | | 5.06 |
| 6 SUBTOTAL | 68786434 | | | | | 6 |
| 7 HOSPITAL SPECIFIC PAYMENTS | | | | | | 7 |
| 8 TOTAL PAYMENT FOR INPATIENT OPERATING COSTS | 68786434 | | | | | 8 |
| 9 PAYMENT FOR INPATIENT PROGRAM CAPITAL | 6818949 | | | | | 9 |
| 10 EXCEPTION PAYMENT FOR INPATIENT PROGRAM CAPITAL | | | | | | 10 |
| 11 DIRECT GRADUATE MEDICAL EDUCATION PAYMENT | 9947648 | | | | | 11 |
| 11.01 NURSING AND ALLIED HEALTH MANAGED CARE | | | | | | 11.01 |
| 12 NET ORGAN ACQUISITION COST | 722704 | | | | | 12 |
| 13 COST OF TEACHING PHYSICIANS | | | | | | 13 |
| 14 ROUTINE SERVICE OTHER PASS THROUGH COSTS | | | | | | 14 |
| 15 ANCILLARY SERVICE OTHER PASS THROUGH COSTS | | | | | | 15 |
| 16 TOTAL | 76474675 | | | | | 16 |
| 17 PRIMARY PAYER PAYMENTS | 10491 | | | | | 17 |
| 18 TOTAL AMOUNT PAYABLE FOR PROGRAM BENEFICIARIES | 76567924 | | | | | 18 |
| 19 DEDUCTIBLES BILLED TO PROGRAM BENEFICIARIES | 4068297 | | | | | 19 |
| 20 COINSURANCE BILLED TO PROGRAM BENEFICIARIES | 491884 | | | | | 20 |
| 21 REIMBURSABLE BAD DEBTS | 1413541 | | | | | 21 |
| 21.01 REDUCED PROGRAM REIMBURSABLE BAD DEBTS | 969865 | | | | | 21.01 |
| 22 SUBTOTAL | 71975536 | | | | | 22 |

44

CALCULATION OF REIMBURSEMENT SETTLEMENT

PART A - INPATIENT HOSPITAL SERVICES UNDER PPS

IN LIEU OF FORM CMS-2552-96 (9/1999)

09/18/2002  15:41:59

WORKSHEET E
PART A
(CONT)

| | HOSPITAL (44-0643) | SUB I | SUB II | SUB III | SUB IV | |
|---|---|---|---|---|---|---|
| 23 | RECOVERY OF EXCESS DEPRECIATION RESULTING FROM PROVIDER TERMINATION OR A DECREASE IN PROGRAM UTILIZATION | | | | | 23 |
| 24 | OTHER ADJUSTMENTS | | | | | 24 |
| 25 | AMOUNTS APPLICABLE TO PRIOR COST REPORTING PERIODS RESULTING FROM DISPOSITION OF DEPRECIABLE ASSETS | | | | | 25 |
| 26 | AMOUNT DUE PROVIDER | 71975336 | | | | 26 |
| 27 | SEQUESTRATION ADJUSTMENT | | | | | 27 |
| 28 | INTERIM PAYMENTS | 72174904 | | | | 28 |
| 28.01 | TENTATIVE SETTLEMENT (FOR FI USE ONLY) | 397255 | | | | 28.01 |
| 29 | BALANCE DUE PROVIDER (/PROGRAM) | -556923 | | | | 29 |
| 30 | PROTESTED AMOUNTS (NONALLOWABLE COST REPORT ITEMS) IN ACCORDANCE WITH CMS PUB 15-II, SECTION 115.2 | | | | | 30 |

45

09/18/2002  15:43:59

ADDENDUM TO WORKSHEET E, PART A

CALCULATION OF DISPROPORTIONATE SHARE ADJUSTMENT

| COMPU-MAX "DSH" LINE | E PT A LINE | | COLUMN 5 | COLUMN 6 | C/As OVERLAPPING JANUARY 20, 2006 | |
|---|---|---|---|---|---|---|
| | | | | | PRIOR TO | ON AND AFTER |
| 1 | 1 | DRG AMOUNT - OTHER THAN OUTLIER PAYMENTS OCCURRING PRIOR TO OCTOBER 1 | | 12602730 | 12602730 | 1 |
| 2 | 1.01 | DRG AMOUNT - OTHER THAN OUTLIER PAYMENTS OCCURRING ON OR AFTER OCT 1 AND BEFORE JAN 1 | | 12285913 | 12285913 | 2 |
| 3 | 1.02 | DRG AMOUNT - OTHER THAN OUTLIER PAYMENTS OCCURRING ON OR AFTER JANUARY 1 | | 27596965 | 27596965 | 3 |
| 4 | 4 | SSI RECIPIENT PATIENT DAYS TO MEDICARE PART A PATIENT DAYS (FROM INTERMEDIARY) | | 12.51 | 12.51 | 4 |
| 5 | 4 | S-3, PART I, LINE 12 (TOTAL HOSPITAL DAYS) DAYS PRIOR TO/ON OR AFTER 1/20/2000 | | | | |
| 6 | | S-3, PART I, LINE 2 (HMO, ETC. DAYS) | | | | 6 |
| 7 | | S-3, PART I, LINE 3 (SWING-BED SNF DAYS) | | | | 7 |
| 8 | | S-3, PART I, LINE 4 (SWING-BED NF DAYS) | | | | 8 |
| 9 | | S-3, PART I, LINE 23 (EMPLOYEE DISCOUNT DAYS) | | | | 9 |
| 10 | | TOTALS: (LINE 12 PLUS LINES 2 & 23, MINUS SUM OF LINES 3 & 4) | | | | 10 |
| 11 | | COLUMN 5 (TITLE XIX) DAYS SPLIT | | | | 11 |
| 12 | | LESS EXCLUSIONS (MEDICAL ASSISTANCE DAYS) | | | | |
| 13 | | NET TOTAL COLUMN 5 (TITLE XIX) DAYS | | | | |
| 14 | | COLUMN 5 (TOTAL) DAYS SPLIT | | | | |
| 15 | | TITLE XIX PATIENT DAYS TO TOTAL DAYS (PLUS EE DISCOUNT DAYS) | | | | |
| 16 | | | | 15650 | 205 | 5 |
| 17 | 4.01 | DISPROPORTIONATE PATIENT PERCENTAGE (LINE 4 PLUS LINE 4.01) | | | | |
| 18 | 4.02 | ALLOWABLE DISPROPORTIONATE SHARE PERCENTAGE | | | | |
| 19 | 4.03 | SPLIT DRG AMOUNTS (SUM OF LINES 1, 1.01, 1.02 TIMES RATIO OF SPLIT DAYS TO TOTAL DAYS) | | PRIOR TO 10/1/1999 | | |
| 20 | 4.04 | DSH REDUCTION FACTOR | | | | |
| 21 | | DISPROPORTIONATE SHARE ADJUSTMENT (LINE 4.03 x SPLIT DRG AMOUNT x DSH REDUCTION FACTOR) | | | | |
| 22 | | COMBINED DISPROPORTIONATE SHARE ADJUSTMENT FOR E, PART A, LINE 4.04 | | | | 22 |

| | COLUMN 5 | COLUMN 6 | PRIOR TO | ON AND AFTER |
|---|---|---|---|---|
| 5 | 15650 | 99675 | | |
| 16 | 15650 | 99675 | 8669 | 6961 12 |
|  |  |  |  | 8669 13 |
|  |  |  | 55294 | 44591 15 |
|  |  |  | 15.65 | 13.68 16 |
| 17 | | | 28.19 | 28.19 17 |
| 18 | 4.02 | | 15.65 | 15.65 18 |
|  |  |  | PRIOR TO 10/1/1999 | |
| 19 | 4.03 | | 12602730 | |
|  | | | 16156912 | 23725964 19 |
| 20 | 4.04 | | 0.98 | 0.97 20 |
| 21 | | | 1656868 | 21392256 | 3141434 21 |
| 22 | | | 6964560 | 22 |

46

**BlueCross BlueShield Association**

An Association of
Independent Blue Cross
and Blue Shield Plans

225 North Michigan Avenue
Chicago, Illinois 60601-7680
Telephone 312.297.6000
http://www.bluecares.com

November 17, 2003

Steve Kirsh, Director
Jurisdiction and Case Management Staff
Provider Reimbursement Review Board
2520 Lord Baltimore Drive, Suite L
Baltimore, MD 21244-2670

Re:  Intermediary's Final Position Paper
     Johnson City Medical Center
     Provider No.: 44-0063
     FYE: 06/30/00
     PRRB Case No. 03-0957

Dear Mr. Kirsh:

Enclosed is a copy of the Intermediary's final Position Paper for the referenced case. I have furnished a copy of the same to the Provider's representative.

If you have any questions, please call me at 312.297.5881 or Mike Shaver at 423.752.7547.

Sincerely,

*Marsha G. Roane*

Marsha G. Roane
Consultant
Prime Contract

Enclosure

cc:  Mike Shaver – Riverbend Government Benefits Administrator
     ████████████ – Quality Reimbursement Services

47

## BEFORE THE PROVIDER REIMBURSEMENT REVIEW BOARD

| | |
|---|---|
| Johnson City Medical Center<br>Provider No. 44-0063<br><br>   (Provider)<br><br><br>     vs.<br><br><br>Riverbend Government Benefits Administrator,<br>a Member of Blue Cross and Blue Shield<br>Association, an Association of Independent<br>Blue Cross and Blue Shield Plans/Blue Cross<br>and Blue Shield Association<br><br>   (Intermediary) | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

PRRB Case No. 03-0957

FYE June 30, 2000

---

### INTERMEDIARY'S POSITION PAPER

Submitted By:

Marsha G. Roane
Consultant
Prime Contract
Blue Cross and Blue Shield Association
225 North Michigan Avenue
Chicago, IL 60601 - 7680

312.297.5881

    and

Mike Shaver
Appeals Coordinator
Riverbend Government Benefits Administrator
730 Chestnut Street
Chattanooga, Tennessee 37402-1790

423.752.7547

November 17, 2003

# TABLE OF CONTENTS

PAGE

## I. INTRODUCTION                                          1

## II. ISSUES AND ADJUSTMENTS IN DISPUTE                    2

## III. INTERMEDIARY'S POSITION

Issue 1: Whether the Intermediary determined Medicare
Reimbursement in accordance with 42 U.S.C. Section
1395ww(d)(5)(C)(I)?

A. Facts                                                    3

B. Argument                                                 5

C. Conclusion                                               8

## IV. EXHIBITS                                             9

I

## I. INTRODUCTION

Johnson City Medical Center (Provider) is a 358 bed, general, short-term, voluntary non-profit, hospital located in Johnson City, Tennessee. The facility operates a rehab unit certified 7/1/87, a skilled nursing facility Medicare certified 12/22/94, and two home health agencies certified on 07/1/84 and 5/1/92.

Relevant statistical information is as follows:

| | |
|---|---|
| Date Certified for Program Participation | 7/01/65 |
| Number of Total Hospital Beds | 358 |
| Total Hospital Days | 99,675 |
| Percent of Occupancy | 72.43% |
| Medicare Patient Days | 51,536 |
| Medicare Utilization | 51.70% |
| Date of Notice of Amount of Program Reimbursement | 9/26/02 |
| Date of Appeal Request | 03/24/03 |

1

## II. ISSUES AND ADJUSTMENTS IN DISPUTE

Issue 1: Whether the Intermediary determined Medicare Reimbursement in accordance with 42 U.S.C. Section 1395ww(d)(5)(C)(I)?

Adjustment Numbers 30

Reimbursement Effect                                    $ 218,028

51

## III. INTERMEDIARY'S POSITION

### Issue 1: Whether the Intermediary determined Medicare Reimbursement in accordance with 42 U.S.C. Section 1395ww(d)(5)(C)(I)?

### A. Facts

On January 1, 1994, the State of Tennessee initiated the TennCare program, which is a Section 1115 waiver expanding Medicaid to provide universal coverage to the uninsured and uninsurable Tennessee populations through a managed care system. On its Medicare cost report for FYE 6/30/00, the Provider reported Disproportionate Share Hospital (DSH) reimbursement of $6,894,637.

In order to document Medicaid eligible days used in the Medicaid fraction, the Provider submitted to the State of Tennessee (the State) a file of TennCare patients to be matched against TennCare and Medicaid eligibility files. The State compared this file electronically to its own eligibility records. The State then provided the hospital a listing that verified the number of eligible, non-eligible, uninsured and uninsurable days. This summary report is used by the Intermediary to determine

52

3

allowable Medicaid eligible days in the calculation of the hospital's DSH payments. (See Exhibit I-1) In addition to the state's eligibility summary, out of state eligibility listings and remittances advices were also furnished at audit to document the Medicaid eligible out of state days. The Intermediary's determination of Medicaid eligible days reduced the days reported on the as-filed cost report by 1,420 days and resulted in a decrease in DSH reimbursement of $218,028. (Audit Adjustment Number 30). ( See Exhibit I-2)

In its appeal, the provider does not dispute the waiver days used in the Intermediary's determination, but disputes the CMS published SSI ratio used by the Intermediary to calculate its DSH reimbursement. Further, the provider appears to have a dispute regarding additional Medicaid secondary days; however, the specific arguments of the provider are not addressed in its position paper. Consequently, the Intermediary is unclear on the specific arguments regarding the additional days. The provider is aggrieved by the Intermediary's DSH reimbursement determination and challenges whether the determination was made in accordance with 42 U.S.C. Section 1395ww(d)(5)(c)(1).

53

## B. Argument

SSI Proxy

The Privacy Act of 1974 can generally be characterized as a code of fair information practices which attempts to regulate the collection, maintenance, use and dissemination of personal information by Federal government agencies.  The Privacy Act provides safeguards against an invasion of privacy through the misuse of records by federal agencies. CMS contractors, commonly referred to as fiscal intermediaries, are considered to be Federal agencies for purposes of administering the Privacy Act and must comply with all of its provisions.  The SSI proxy for each hospital is determined by CMS based on Medicare beneficiary information obtained from the Social Security Administration.  Claims and other statistical information used to derive the hospital's SSI fraction are not released to the fiscal intermediaries because of the Privacy Act and other HIPPA laws, which restrict the sharing of patient related information.  Rather, CMS releases the SSI percentages on its website which can be viewed as a public record by intermediaries and the hospital community alike.

54

Intermediaries are instructed by CMS to use the published ratios for each hospital unless a provider is granted a revised SSI ratio based on additional documentation furnished to CMS by the hospital. In this instance, there is no evidence at audit that the Provider was dissatisfied with the SSI ratio used in the intermediary's final determination or could support its contention that the SSI ratio was incorrect. Based on our review of the provider's arguments, it indicates that a request has been made to CMS to identify the patients in the computation of the SSI percentage by Medicare Number. Because of the privacy restrictions placed on CMS and fiscal intermediaries discussed herein, it is our belief that specific Medicare beneficiary information cannot be released to requesting hospitals without patients' consent. CMS may consider updating the SSI Proxy based on information furnished by the hospital by cost reporting period, but detailed Medicare beneficiary information used to derive the SSI fractions by CMS are generally not released as this information is restricted by law.

The SSI ratios computed by CMS are compiled based on the government's federal fiscal period; however, a hospital can request that

its own cost reporting period be used instead of the federal fiscal year.

In accordance with 42 CFR 412.106b(b)(3):

> "If a hospital prefers that HCFA use its cost reporting period
> instead of the Federal fiscal year, it must furnish its Intermediary,
> in machine-readable format as prescribed by HCFA, data on its
> Medicare Part A patients for its cost reporting period  (See
> Exhibit I-3)

The Medicaid patient data furnished by CMS served as the best

available information for the purpose of determining the DSH payments.

Further, the provider is disputing an issue that is related to CMS policy.

Because CMS determines the computation for the SSI percentage

annually in accordance with the regulations at 42 CFR 412.106ff,

revisions of this percentage is beyond the authority of the Intermediary.

Since there is no documentary evidence that CMS has granted a revised

SSI ratio for the provider, the ratio used by the Intermediary at audit was

appropriate.


Medicaid Days

Based on the Intermediary's review of the provider's Exhibit P-4, the

provider appears to have a dispute regarding 426 Medicaid secondary

days not considered in the Medicaid fraction of the hospital's DSH

56

payment. Since the provider's specific arguments were not presented in its preliminary position paper, we are uncertain of the specific dispute relating to these days. Until the Intermediary has a better understanding of the provider's arguments and the hospital provides documentary evidence to support the additional days it seeks, the Intermediary's conjecture of the issue in the provider's dispute would be inappropriate.

## C. Conclusion

Due to the reasons stated above, the Intermediary believes its calculation of DSH reimbursement is appropriate and was based on the best available information at the time of the audit. Therefore, we respectfully request the Board affirm the Intermediary's adjustments.

57

Exhibit B

**CERTIFIED MAIL**
**RETURN RECEIPT REQUESTED**

March 24, 2003

Suzanne Cochran, Esq.
Chairman
Provider Reimbursement Review Board
2520 Lord Baltimore Drive, Suite L
Baltimore, MD 21244-2670

Re:    **Provider Name**        :    **JOHNSON CITY MEDICAL CENTER**
       **Provider Number**      :    **44-0063**
       **Intermediary**         :    **Riverbend GBA**
       **Request for Medicare Appeal**

## NOTICE OF CORRECTION – PROGRAM REIMBURSEMENT

Notice Date                        Fiscal Year

September 26, 2002                  June 30, 2000

Dear Ms. Cochran:

The hospital respectfully appeals the under mentioned determinations of the Intermediary contained in the above NPR.

### Issue 1  Disproportionate Share Payment

#### SSI Proxy

The Provider contends that the Intermediary did not determine Medicare DSH reimbursement in accordance with the statutory instructions at 42 U.S.C. 1395ww(d)(5)(F)(i). Specifically, the provider disagrees with the intermediary's calculation of the computation of the disproportionate patient percentage set forth at 42 C.F.R. 412.106(b)(2)(i) of the Secretary's regulations. The provider contends that the intermediary did not furnish the matching data from which the SSI proxy had been derived, and that this validation information has been withheld on the basis of a statement in the commentary to the 1995 final rule for inpatient PPS. See 60 Fed. Rep. 45811-12 (Sept. 1 1995). The statement indicates that the SSI eligibility data used for this DSH calculation is not available to verify provider's disproportionate patient percentage because it is protected by the Privacy Act. The intermediary cannot support its reliance on a statement that occurs in the preamble of a published rule but is not supported by the regulatory text or by the authorizing statute.

A system of records entitled Medicare Provider Analysis and Review ("MEDPAR"), HHS/HCFA/OIS, 09-07-009 was published in the Federal Register on August 18, 2000, 65 Fed. Reg. 50548 (August 18, 2000). This system of records was purported to establish a system to collect and disseminate the information necessary "to recalculate Supplemental Security Income ("SSI") ratios for hospitals that are paid under the [Prospective Payment System] and serve a disproportionate share of low-income patients." Id. This data is a key component in determining whether affected hospitals may be entitled to increased reimbursement under Part A of the Medicare program. The regulations impose restrictive conditions that do not permit the

provider to obtain and reconcile the SSI data maintained by CMS with provider records. Provider therefore contends that this is not in conformance with the statutory provisions of DSH reimbursement.

Reimbursement Amount:  $ 100,000

### Issue 2  Disproportionate Share Payment

#### Medicaid Percentage (Eligible Days)

The provider contends that the Fiscal Intermediary did not determine Medicare reimbursement for disproportionate share hospitals (DSH) in accordance with the statutory instructions at 42 U.S.C. 1395ww(d)(5) (c)(i). Specifically, the provider disagrees with the calculation of the second computation of the disproportionate share patient percentage, set forth at 42 CFR 412.106(b)(4) of the Secretary's regulations. The intermediary, contrary to the regulation, failed to include as Medicaid-Eligible Days services to patients for Medicaid, as well as patients eligible for general assistance.

Reimbursement Amount:  $200,000

In accordance with Section 2922 et seq. Part 1, Chapter 20 of the Provider Reimbursement Review Board Manual, Mr. Amrish C. Mathur, Quality Reimbursement Services is our designated representative for this appeal.

> Quality Reimbursement Services
> 150 N. Santa Anita Avenue
> Suite 570A
> Arcadia, CA 91006
> Phone (626) 445-5092
> Fax (626) 821-4488

If you have any questions, please feel free to contact us.

Sincerely,

Yvette Hayes
Director of Reimbursement

cc:    Mike Shaver, Riverbend GBA, 730 Chestnut Street, Chattanooga, TN 37402.

Wilson Leong, PRRB Appeals Coordinator, Blue Cross & Blue Shield Association, 225 North Michigan Avenue, Chicago, IL 60601.



DEPARTMENT OF HEALTH AND HUMAN SERVICES
PROVIDER REIMBURSEMENT REVIEW BOARD
2520 Lord Baltimore Drive, Suite L
Baltimore MD 21244-2670

Phone: 410-786-2671          FAX: 410-786-5298

Suzanne Cochran, Esq., Chairperson
Henry C. ssman, Esq.
Martin W. Hoover, Jr., Esq.
Gary B. Blodgett, D.D.S.

Refer to:

CERTIFIED MAIL
- - - - - - - - - - - - - -

APR 23 2003

Quality Reimbursement Services
Amrish C. Mathur
150 N. Santa Anita Avenue
Suite 570A
Arcadia, CA 91006

FILE
Brown folder

POSTED
84/64/20

Re: Acknowledgment and Critical Due Dates
    Case Number: 03-0957
    Date Filed: 03/24/03
    Provider Name: Johnson City Medical Center
    Provider Number: 44-0063
    Appealed Year - FYE: 06/30/00

The Provider Reimbursement Review Board ("Board") has received your
request for a hearing.  You will need to obtain a copy of the Board's
instructions which are located on the Board's web site at
www.cms.hhs.gov/providers/prrb/prrb.asp.  If Internet access is not
available to you, you may call the Board at (410) 786-2671 and request
that a copy be mailed to you.

You must reference the case number and provider information on all
correspondence with the Board.  If any of the above information is
incorrect, you must inform the Board, in writing, within 30 days of
this letter.

DUE DATES
- - - - - - - - -

1st of August 2003: Provider's Preliminary Position Papers due to the
     Intermediary (with letter to the Board certifying that preliminary
     position paper due date has been met and copy of the first page
     only of the preliminary position paper).

1st of October 2003: Intermediary's Preliminary Position Papers due
     to the Provider (with letter to the Board certifying that
     preliminary position paper due date has been met and copy
     of the first page only of the preliminary position paper).

1st of December 2003: Final position papers due to the Board from both
     Parties.

DISMISSALS
- - - - - - - - - -

You are responsible for pursuing your appeal in accordance with the
Board's procedures which are outlined in the Board's Instructions.
You must file your position papers, regardless of any outstanding
jurisdictional challenges, motions or subpoena requests.  If you miss
any of your due dates including meeting either position paper due date,
the Board will dismiss your appeal.  The Board will not send a due date
reminder.  If the Intermediary fails to meet its deadlines, the Board
will contact the Centers for Medicare & Medicaid Services (CMS) about
contract compliance and will schedule a hearing date.

61



**DEPARTMENT OF HEALTH AND HUMAN SERVICES**
**PROVIDER REIMBURSEMENT REVIEW BOARD**
2520 Lord Baltimore Drive, Suite L
Baltimore MD 21244-2670
Phone: 410-786-2671          FAX: 410-786-5298

Suzanne Cochran, Esq., Chairperson
Henry C. Grossman, Esq.
Martin W. Hoover, Jr., Esq.
Gary B. Blodgett, D.D.S.

Refer to:

## TENTATIVE HEARING DATE
-----------------------

April 2004: Tentative month and year of hearing.

The Board will send you a Notice of Board Hearing to notify you of the
specific time, date and location of the hearing.  The Notice of Hearing
will be issued at least 30 days prior to the actual hearing date.

## OPTIONS
-------

You may make a written request, at any time, that:
     your month of hearing be rescheduled to an earlier month;
     your case be heard based on the submitted record;
     your case be conducted by video or teleconference;
     your case be resolved through alternative dispute resolution/mediation;
     your case be reviewed in a pre-hearing conference with a Board member.

If you request any of these options, you must continue to meet the due
dates set forth in this letter until you are advised regarding your
request by the Board.

Steven R. Kirsh
Division of Jurisdiction and Case Management


cc: BC & BS Association
    Wilson C. Leong
    225 North Michigan Avenue
    Chicago, IL 60601-7680

Riverbend GBA
Lorraine Rachmiel, Manager
Provider Audit/Reimbursement Departme
20 Commerce Drive, Suite 115
Cranford, NJ 07016

U.S. OFFICIAL MAIL
U.S. POSTAGE
04.42
PENALTY FOR PRIVATE USE $300
METER 450196

BALTIMORE
APR 23'03
MD



7160 3901 9844 3175 2077

**RETURN RECEIPT REQUESTED**

**U.S. DEPARTMENT OF**
**HEALTH & HUMAN SERVICES**
Provider Reimbursement Review Board
Medicare Geographic Classification Review Board
2520 Lord Baltimore Drive, Suite L
Baltimore, Maryland 21244-2670

**Official Business**

Quality Reimbursement Services
Amrish C. Mathur
150 N. Santa Anita Avenue
Suite 570A
Arcadia, CA 91006

91006+3132 15

63

# QU___ITY REIMBURSEMENT SERVICE.
## *Healthcare Consultants*

<u>**Via United Parcel Service**</u>

June 7, 2005

Ms. Suzanne Cochran, Esq.
Chairperson
Provider Reimbursement Review Board
2520 Lord Baltimore Drive, Suite L
Baltimore, MD 21244-2670

Re:   Provider Name        :   **Johnson City Medical Center**
      Provider Number      :   **44-0063**
      PRRB Case Number     :   **03-0957**
      Fiscal Year Ended    :   **June 30, 2000**
      Supplemental Final Position Paper

Dear Ms. Cochran:

We are enclosing a supplemental final position paper for the above referenced appeal.

This supplemental position paper addresses a recent decision by the U.S. Court of Appeals for the Ninth Circuit in Portland Adventist Medical Center et al. v. Tommy G. Thompson dated March 2, 2005.

If you have any questions, please feel free to contact me at (626) 445-5092.

Sincerely,

Amrish C. Mathur
Associate

cc:   Mr. Mike Shaver, Appeals Coordinator, Medicare Provider Reimbursement Dept., Riverbend Government Benefits Administrator, 730 Chestnut Street, Chattanooga, TN 37402-1790 (w/encl.)

      Ms. Marsha Roane, Consultant, Strategic Government Initiatives, Blue Cross Blue Shield Association, 225 N. Michigan Avenue, Chicago, IL 60601-7680

      Ms. Yvette C. Hayes, Director of Reimbursement, Mountain States Health Alliance, 400 North State of Franklin Road, Johnson City, TN 37604 (w/encl.)

Enclosure

DR

*150 N. Santa Anita Avenue, Ste.570A, Arcadia, CA 91006 • Tel. (626) 445-5092 • Fax (626) 821-4488*
*Offices in : Spokane, Chicago, Colorado Springs, Detroit & Birmingham*

64

Exhibit D

INTERMEDIARY BENEFITS ADMINISTRATOR          CMS-2552-96 AUDIT ADJUSTMENT REPORT          RUN DATE: 08/16/2002    PAGE 15
GR: SON CITY MEDICAL CENTER                   PROVIDER NUMBER: 44-0063                    FISCAL PERIOD: 07/01/1999 TO 06/30/2000

| P | F | T | LINE | COLUMN | A6/A8 LTR | LINE | EXPLANATION OF AUDIT ADJUSTMENTS | AS REPORTED | INCREASE/ DECREASE | AS ADJUSTED |
|---|---|---|------|--------|-----------|------|----------------------------------|-------------|--------------------|-------------|
| A | 1 | | 1 | | | 1 | DRG OTHER THAN OUTLIER PAYMENTS | 12984617 | -381887 | 12602730 |
| A | 1 | | 1.01 | | | 1 | DRG OTHER THAN OUTLIER PAYMENTS | 12984617 | -698704 | 12285913 |
| A | 1 | | 1.02 | | | 1 | DRG OTHER THAN OUTLIER PAYMENTS | 25969235 | 1627728 | 27596963 |
| A | 1 | | 2.01 | | | 1 | DRG OTHER THAN OUTLIER PAYMENTS | 3525792 | 204978 | 3730770 |
| A | 1 | | 17 | | | 1 | PRIMARY PAYOR PAYMENTS | 54194 | 52757 | 106951 |
| A | 1 | | 19 | | | 1 | DEDUCTIBLES BILLED TO PGM BENEFICIARIES | 4838905 | 28624 | 4867529 |
| A | 1 | | 20 | | | 1 | COINSURANCE BILLED TO PGM BENEFICIARIES TO ADJUST PROVIDER'S COST REPORT TO INTERMEDIARY DATA   REF:  42 CFR 412.110/413.20 CMS PUB. 15-1 SEC 2408:4 CLAIMS PAID THRU: 12/31/2001 Prov#440063 W/P F-4(A) | 460672 | 33184 | 493856 |
| A | 1 | | 3.08 | | | 1 | FTE COUNT - ALLOPATHIC & OSTEOPATHIC | 67.33 | 4.49 | 71.82 |
| A | 1 | | 3.19 | | | 1 | FY RESIDENT TO BED RATIO TO ADJUST WORKSHEET E, PART A FOR THE BBA IME PROVISIONS. CMS PUB. 15-II, SECTION 3630.1 PER 42 CFR 413.86 W/P 2-14 | .192666 | .002600 | .195266 |
| A | 1 | | 2.01 | | | 1 | PART A COST OUTLIER TO ADJUST PART A COST OUTLIER TO PER AUDIT. PER CMS PUB. 15-I, SECTION 2408FF W/P F-4(A)1(A) | 3730770 | -9512 | 3721258 |
| A | 1 | | 4.04 | | | 1 | DSH PAYMENT TO ADJUST THE DSH PAYMENT TO AMOUNT AS FOUND PER REVIEW. 42 CFR 412.106 W/P F-8(A) | 6894637 | -218028 | 6676609 |
| A | 2 | | 19 | | | 1 | DEDUCTIBLES BILLED TO PGM BENEFICIARIES TO ADJUST PART A DEDUCTIBLES. PER CMS PUB. 15-I, SECTION 2408FF W/P F-4(A)1(A) | 4867529 | 768 | 4868297 |
| | | | 20 | | | 1 | PROTESTED AMOUNTS TO REMOVE PROTESTED ITEMS FROM COST REPORT. PER CMS PUB. 15-I, SECTION 1520.30 W/P F-5 | 1444591 | -1444591 | 0 |

66

**JOHNSON CITY MEDICAL CENTER**
**Provider Number: 44-0063**
**DSH Calculation**
**Fiscal Year Ended: 06/30/2000**

**Impact of 3,711 Section 1115 Waiver Days**

| | | | |
|---|---|---|---|
| Increase in Medicaid Proxy | (1) | 3,711 | 3.72310008% |
| | | 99,675 | |
| DRG | (2) | | $51,938,469 |
| Multiplier | (3) | | 82.50% |
| Net Impact | (1) x (2) x (3) | | $    1,595,320 |

Exhibit C

# QUALITY REIMBURSEMENT SERVICES

### Healthcare Consultants

<u>Via Federal Express</u>

August 13, 2005

**FILE**
Group

Mr. Steven R. Kirsh
Director
Jurisdiction & Case Management Staff
Provider Reimbursement & Review Board
2520 Lord Baltimore Drive, Suite L
Baltimore, MD 21244-2670

Re:    **Initial Request for Hearing – Group Appeal**
       **Title of Group: QRS 2000 Section 1115 Waiver Days Group Appeal**

Dear Mr. Kirsh:

The following referenced providers seek a hearing before the Provider Reimbursement Review Board (Board) pursuant to 42 C.F.R. 405.1835 and 405.1837. The aggregate amount of Medicare reimbursement in dispute for the group will exceed $50,000.

| PROV NO. | PROV NAME | FYE | NPR DATE | INTERMEDIARY | CASE # |
|----------|-----------|-----|----------|--------------|--------|
| 26-0040 | Cox Medical Center | 09/30/00 | 09/15/2003 | Mutual of Omaha | 04-0736 |
| 44-0063 | Johnson City Medical Center | 06/30/00 | 09/26/2002 | Riverbend, GBA | 03-0957 |

The common issue before the Board will be:

> Whether the Intermediary's determination of DSH eligibility and/or the DSH adjustment, as required by the HCFA/CMS' unlawful interpretation of the DSH statute 42 U.S.C. § 1395ww(d)(5)f), to exclude Section 1115 Waiver days in the Medicaid days portion of the DSH calculation, violates the DSH statue.

The provider requests that the above issue be added to the pending individual appeals noted above, and that the issue be transferred to the Group Appeal. The individual appeals otherwise remain pending before the Board regarding other issues.

Sincerely,

J. C. Ravindran
President

cc:    Mr. Terry Gouger, Appeals Supervisor, Medicare Audit & Reimbursement, Mutual of Omaha
       Insurance Plaza, Lower Level 2, Omaha, NE 68131

       Mr. Wilson C. Leong, Director, Medicare Appeals, Blue Cross Blue Shield Association, 225 N.
       Michigan Avenue, Chicago, IL 60611
Enclosures
JCR:DR

69



**DEPARTMENT OF HEALTH AND HUMAN SERVICES**
**PROVIDER REIMBURSEMENT REVIEW BOARD**
2520 Lord Baltimore Drive, Suite L
Baltimore MD 21244-2670

Phone: 410-786-2671            FAX: 410-786-5298

Suzanne Cochran, Chairperson
Gary B. Blodgett, D.D.S.
Elaine Crews Powell, CPA
Anjali Mulchandani-West

## CERTIFIED MAIL

Quality Reimbursement Services
J.C. Ravindran
President
150 N. Santa Anita Avenue, Suite 570A
Arcadia, CA  91006

AUG 1 8 2005

RE:  Group Acknowledgement and Critical Due Dates
       Case Number:  05-1985G
       Group Name:  QRS 2000 Section 115 Waiver Days Group
       Appealed Year – FYE:  9/30/2000
       Group Representative Name:  Quality Reimbursement Services

The Provider Reimbursement Review Board ("Board") has received your request for a hearing.  You will need to obtain a copy of the Board's instructions which are located on the Board's web site at http://www.cms.hhs.gov/providers/prrb/prrb.asp.  If internet access is not available to you, you may call the Board at (410) 786-2671 and request that a copy be mailed to you.

You must reference the case number and provider information on all correspondence with the Board. If any of the above information is incorrect, you must inform the Board, in writing, within 30 days of this letter.

<u>DUE DATES</u>

Certified Article Number

7160 3901 9849 1070 9271

SENDERS RECORD

**1st of October 2006**
The Group Representative is to mail a letter to the Board stating that group is complete and identifying the lead intermediary.

**1st of December 2006**
The Group Representative must file a preliminary position paper with the lead intermediary (with a letter to the Board certifying that the preliminary due date has been met and a copy of the first page only of the preliminary position paper.)  The Group Representative must also complete and submit the Schedule of Providers with associated jurisdictional documentation to the lead intermediary.

**1st of February 2007**
The lead intermediary must file a preliminary position paper with the Group Representative (with a letter to the Board certifying that the preliminary due date has been met and a copy of the first page only of the preliminary position paper.)  The lead intermediary must also forward the Schedule of Providers, the associated jurisdictional documents and comments regarding jurisdiction to Board.

**1st of April 2007**
Final position papers due to the Board from both Parties.

70

## DISMISSALS

The group representative is responsible for pursuing the group appeal in accordance with the Board's procedures, which are outlined in the Board's Instructions. You must file all required documentation, including position papers, regardless of any outstanding jurisdictional challenges, motions or subpoena requests. If the group representative misses any of its due dates, the Board will dismiss the group appeal. The Board will not send a due date reminder. If the Intermediary fails to meet its deadlines, the Board will contact the Centers for Medicare and Medicaid Services (CMS) about contract compliance and will schedule a hearing date.

## TENTATIVE HEARING DATE

**August 2007:** Tentative month and year of hearing.

The Board will send the parties a Notice of Board Hearing to notify you of the specific time, date and location of the hearing. The Notice of Hearing will be issued at least 30 days prior to the actual hearing date.

## OPTIONS

You may make a written request, at any time, that:
> your month of hearing be rescheduled to an earlier month;
> your case be heard based on the submitted record;
> your case be conducted by video or teleconference;
> your case be resolved through alternative dispute resolution/mediation;
> your case be reviewed in a pre-hearing conference with a Board member.

The group representative must continue to follow the due dates set forth in this letter until the Board acknowledges such request.

Steven R. Kirsh, Director
Division of Jurisdiction & Case Management

cc:   Wilson C. Leong
      BC & BS Association
      225 North Michigan Avenue
      Chicago, IL  60601-7680

      Terry Gouger
      Mutual of Omaha Insurance Company
      P.O. Box 1604
      Omaha, NE  68101

71

# QUALITY REIMBURSEMENT SERVICES
## Healthcare Consultants

<u>**Via Federal Express**</u>

August 13, 2005

Mr. Steven R. Kirsh
Director
Jurisdiction & Case Management Staff
Provider Reimbursement & Review Board
2520 Lord Baltimore Drive, Suite L
Baltimore, MD 21244-2670

RECEIVED

AUG 1 5 2005

PROVIDER REIMBURSEMENT
REVIEW BOARD

**Re:    Initial Request for Hearing – Group Appeal**
**Title of Group: QRS 2000 Section 1115 Waiver Days Group Appeal**

Dear Mr. Kirsh:

The following referenced providers seek a hearing before the Provider Reimbursement Review Board (Board) pursuant to 42 C.F.R. 405.1835 and 405.1837. The aggregate amount of Medicare reimbursement in dispute for the group will exceed $50,000.

| PROV NO. | PROV NAME | FYE | NPR DATE | INTERMEDIARY | CASE # |
|----------|-----------|-----|----------|--------------|--------|
| 26-0040 | Cox Medical Center | 09/30/00 | 09/15/2003 | Mutual of Omaha | 04-0736 |
| 44-0063 | Johnson City Medical Center | 06/30/00 | 09/26/2002 | Riverbend, GBA | 03-0957 |

The common issue before the Board will be:

> Whether the Intermediary's determination of DSH eligibility and/or the DSH adjustment, as required by the HCFA/CMS' unlawful interpretation of the DSH statute 42 U.S.C. § 1395ww(d)(5)f), to exclude Section 1115 Waiver days in the Medicaid days portion of the DSH calculation, violates the DSH statue.

The provider requests that the above issue be added to the pending individual appeals noted above, and that the issue be transferred to the Group Appeal. The individual appeals otherwise remain pending before the Board regarding other issues.

Sincerely,

J. C. Ravindran
President

cc:    Mr. Terry Gouger, Appeals Supervisor, Medicare Audit & Reimbursement, Mutual of Omaha Insurance Plaza, Lower Level 2, Omaha, NE 68131

Mr. Wilson C. Leong, Director, Medicare Appeals, Blue Cross Blue Shield Association, 225 N. Michigan Avenue, Chicago, IL 60611

Enclosures
JCR:DR

72

# QU...IT*REIMBURSEMENT SERVICES

### *Healthcare Consultants*

<u>**Via United Parcel Service**</u>

June 7, 2005

**FILE**
*Client*

Ms. Suzanne Cochran, Esq.
Chairperson
Provider Reimbursement Review Board
2520 Lord Baltimore Drive, Suite L
Baltimore, MD 21244-2670

| Re: | Provider Name | : | **Johnson City Medical Center** |
|---|---|---|---|
| | Provider Number | : | **44-0063** |
| | PRRB Case Number | : | **03-0957** |
| | Fiscal Year Ended | : | **June 30, 2000** |
| | **Supplemental Final Position Paper** | | |

Dear Ms. Cochran:

We are enclosing a supplemental final position paper for the above referenced appeal.

This supplemental position paper addresses a recent decision by the U.S. Court of Appeals for the Ninth Circuit in Portland Adventist Medical Center et al. v. Tommy G. Thompson dated March 2, 2005.

If you have any questions, please feel free to contact me at (626) 445-5092.

Sincerely,

Amrish C. Mathur
Associate

cc: Mr. Mike Shaver, Appeals Coordinator, Medicare Provider Reimbursement Dept., Riverbend Government Benefits Administrator, 730 Chestnut Street, Chattanooga, TN 37402-1790 (w/encl.)

Ms. Marsha Roane, Consultant, Strategic Government Initiatives, Blue Cross Blue Shield Association, 225 N. Michigan Avenue, Chicago, IL 60601-7680

Ms. Yvette C. Hayes, Director of Reimbursement, Mountain States Health Alliance, 400 North State of Franklin Road, Johnson City, TN 37604 (w/encl.)

Enclosure

DR

73



**CERTIFIED MAIL**

February 20, 2004

Suzanne Cochran, Esq.
Chairperson
Provider Reimbursement Review Board
2520 Lord Baltimore Drive, Suite L
Baltimore, MD 21244-2670

Re:    **Provider Name**    :    **Lester E. Cox Medical Center**
       **Provider Number**    :    **26-0040**
       **Fiscal Year Ended**    :    **September 30, 2000**

Dear Ms. Cochran:

In accordance with section 2922 et seq. Part 1, Chapter 20 of the Provider Reimbursement Review Board Manual, we wish to authorize the under mentioned person to represent the Hospital on the appeal relating to the above fiscal year end.

    J. C. Ravindran, CPA
    President
    Quality Reimbursement Services
    150 N. Santa Anita Avenue, Ste. 570A
    Arcadia, CA  91006

If you have any questions, please feel free to contact me at (417) 269-8811.

Sincerely,

Larry D. Pennel
Chief Financial Officer

cc:    Mr. Arlen Mieras, Manager, Technical Support, Appeals & Reopenings, Mutual of Omaha Insurance Company, Mutual of Omaha Plaza, Lower Level 2, Omaha, NE  68131

*Cox Medical Plaza II  •  3850 South National Avenue  •  Springfield, Missouri 65807*
*www.coxhealth.com*

Cox South • Cox Walnut Lawn • Cox North • Cox Monett • Burrell Behavioral Health • Ferrell-Duncan Clinic • Oxford HealthCare • Home Parenteral Services
Primrose Place • Regional Services • Lester L. Cox College of Nursing and Health Services • Cox Healthcare Foundation
An Equal Opportunity-Affirmative Action Employer. Services provided on a nondiscriminatory basis. Patient admissions, room assignments and patient services are provided without regard to race, color, national origin, disability or age.

74

**JOHNSON CITY MEDICAL CENTER**
**Provider Number: 44-0063**
**DSH Calculation**
**Fiscal Year Ended: 06/30/2000**

**Impact of 3,711 Section 1115 Waiver Days**

| | | | |
|---|---|---|---|
| Increase in Medicaid Proxy | (1) | 3,711 | 3.72310008% |
| | | 99,675 | |
| DRG | (2) | | $51,938,469 |
| Multiplier | (3) | | 82.50% |
| Net Impact | (1) x (2) x (3) | | $  1,595,320 |

75

**COX MEDICAL CENTER**
**Provider Number: 26-0040**
**DSH Calculation**
**Fiscal Year Ended: 09/30/2000**

**Impact of 550 Section 1115 Waiver Days**

| | | | |
|---|---|---|---|
| Increase in Medicaid Proxy | (1) | 550 | 0.40412056% |
| | | 136,098 | |
| DRG | (2) | | $57,442,284 |
| Multiplier | (3) | | 82.50% |
| Net Impact | (1) x (2) x (3) | | $    191,512 |

76